(No. 30835.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES R. SHEPPARD, Plaintiff in Error.

*Opinion filed January 19, 1949—Rehearing denied March 15, 1949.*

ELMER N. HOLMGREN, and JULIAN C. RYER, both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, MELVIN S. REMBE, W. S. MIROSLAWSKI, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff in error, James R. Sheppard, was charged by an indictment returned in the criminal court of Cook County with an assault with a deadly weapon, with intent to murder Frederick Draheim. He pleaded not guilty and waived a

trial by jury. The court found him guilty and sentenced him to imprisonment in the penitentiary for a term of not less than three nor more than five years. Sheppard prosecutes this writ of error.

The only issues here raised go to the sufficiency of the evidence to support the judgment of conviction. The facts in the record show that plaintiff in error, on September 14, 1947, operated a hotel or rooming house at 717 N. Clark Street, Chicago, Illinois. Entrance to the hotel was gained through a doorway on Clark Street and thence up a flight of stairs to the second floor of the premises. Immediately adjacent to this door was another which was the entryway to the premises at 719 N. Clark Street. At 9:00 A.M. on the morning of September 14, Frederick Draheim, who resided in the premises at 719 N. Clark Street, was just returning from his work and sat down on the doorstep of the open doorway leading to plaintiff in error's hotel. He testified that while he sat there, one Conart came along and engaged in a conversation; that after about two minutes Conart, who had looked up the stairs, said: "Look out there, you are going to get shot," and at that instant a shot was fired which hit complianant in the left buttock. Draheim further testified that he turned, looked up the stairway, and saw plaintiff in error with a rifle; that no conversation or warning had preceded the attack; that no one had come in or out of the doorway to 717 as he sat there, and that he and Conart were the only persons in the vicinity of the doorway.

Draheim complained to the police who arrested plaintiff in error. Harte, the arresting officer, testified that he first saw plaintiff in error round 9:30 A.M.; that he admitted the shooting and led the officer to where he had concealed the weapon, (which turned out to be a combination .22 caliber rifle and a No. 410 shotgun,) in rubbish in the basement of the hotel. The foregoing testimony of Draheim and Harte constituted the proof made by the People,

The version of the affair presented by defense witnesses is utterly different and irreconcilable. Plaintiff in error, a man 68 years of age, testified that the incident occurred at 11:00 A.M. of September 14. He stated that about 8:00 A.M. that morning he was awakened by a melee in the street which he listened to for about half an hour, until somebody ordered the persons in the street away, and at which time a man on the third floor threw water, apparently on the offenders in the street. He testified that he then arose, went to the head of the stairs, saw Draheim sitting in the doorway and ordered him to move; that the latter called him obscene names, and was exhorted by bystanders in profane language not to move; that plaintiff in error replied that he would get him moved off the step and picked up a telephone located at the top of the stairs. When he did this, the bystander who was standing in front of Draheim, started up the stairs, whereupon plaintiff in error stated that he laid the phone down, picked up his combination rifle and shotgun and warned the man not to come further; that the latter retreated to the street where he was joined by one Talmadge and the two of them started up the stairway. Plaintiff in error further testified that he then started down the stairway and after going a few steps raised his rifle and, as he describes it, "I fired at him, at the door jamb, that is the sill." He stated that Draheim had remained seated in the doorway during the entire altercation, but that he was not in line with the gun when it was fired, and that he, plaintiff in error, had hit what he aimed at namely a door jamb. He testified that the gun was loaded with a .22-caliber shot, and medical testimony introduced in behalf of plaintiff in error indicates that Draheim suffered only superficial wounds from pellets which had just penetrated the skin.

One Al Sawickis, a tenant in plaintiff in error's hotel, was also called as a witness for the defense. He recounted that about 9:00 A.M. on the morning in question he was

working on his car which was parked across the street from the hotel; that at the time there was a big gang around the door of the hotel arguing loudly, and who answered him profanely when he remonstrated with them to be quiet.. Sometime later he heard someone call out, "We are going to get you," and saw two men enter the stairway to the hotel. On cross-examination he stated that he then heard the shot but made no further investigation of it; that he did see Draheim, who had been sitting in the doorway, leave in the direction of the police station. When asked why he had not reported what he saw to the police, he said he was not asked and that he had kept it a "big secret."

A further witness for the defense, an elderly man named Andrew Mooshey, stated that he had visited a friend in plaintiff in error's hotel on the morning of Sunday, September 14, 1947, as his friend did not work on Sundays; that he heard a commotion outside the hotel and from the hallway saw one man sitting in the doorway and two men standing before him; that they were calling plaintiff in error dirty names, and that he saw plaintiff in error shoot them when they came up the steps after the former.

We have detailed the evidence at length to show that extreme conflict exists between the versions of the assault as developed by the prosecution and the defense. If the story told by Draheim is true, plaintiff in error is guilty of a deliberate, malicious and unprovoked assault, from which the intent to murder may be presumed; while, if the version of plaintiff in error and his supporting witness should prevail, it is apparent that the assault was made in self-defense and that there is insufficient evidence upon which to base an intent to murder Draheim. The fact that the evidence of opposing witnesses is conflicting on the material facts in issue will not justify a reversal where there is sufficient credible evidence to convict. (*People* v. *Shack,* 396 Ill. 285; *People* v. *Merritt,* 367 Ill. 521; *People* v. *Gotter,* 357 Ill. 214.) As we view the record, the sufficiency of the evi-

dence depends solely upon the credibility of the witnesses and the weight to be given their testimony. This court will not sustain a conviction on a criminal charge where the evidence is improbable, unsatisfactory or reasonably doubtful. However, it will not substitute its judgment for that of a jury, or of a judge sitting without a jury, in merely weighing the credibility of the witnesses, where the testimony is conflicting. *People* v. *Franklin,* 390 Ill. 108; *People* v. *Langer,* 384 Ill. 608.

The trial court saw and heard the witnesses testify and was in the best position to judge the weight and credibility of their testimony. The court accepted the version of the incident testified to by the complaining witness Draheim, and from the state of the record we are of the opinion that such choice was not unreasonable or improper. Plaintiff in error admitted that he fired the shot by which the complainant was wounded. The evidence that it was fired in self-defense was not believed by the court. It is difficult to believe that Draheim would have remained seated in the doorway while the alleged bystanders passed in and out, or that he would keep his back turned to an armed altercation ensuing immediately behind him. After a consideration of all circumstances we will not disturb the finding of the trial court.

The majority of the errors assigned here are based on plaintiff in error's assumption that his version of the assault was the true one. In view of our refusal to alter the finding of fact made by the trial court there remains to be considered only the contention that there is no evidence to prove the intent necessary to constitute the crime of assault with intent to murder. We have held that every sane man is presumed to intend the natural and probable consequence flowing from his own deliberate act, and where he assaults another with a weapon likely to produce death, and the assault is such that if death results the crime would be murder, express proof of the intent to murder is not re-

quired. (*People* v. *Simmons*, 399 Ill. 572; *People* v. *Wilson*, 342 Ill. 358.) Thus one may be convicted of murder if he fires a rifle at or towards another, either with malice aforethought or with a total disregard for human life. From our view of the evidence, the intent of plaintiff in error may be presumed from his wanton firing at Draheim.

We are of the opinion that there is sufficient evidence to support the judgment of the criminal court of Cook County and to prove guilt beyond a reasonable doubt. It is therefore affirmed.

*Judgment affirmed.*