(No. 31179

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
JAMES R. SHEPPARD, Appellant.

*Opinion filed January 18, 1950.*

JULIAN C. RYER, of Chicago, (ELMER N. HOLMGREN,
and RALPH W. PACK, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ALEXANDER NAPOLI, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

September 17, 1947, James R. Sheppard was indicted in the criminal court of Cook County for the crime of assault with a deadly weapon, with intent to murder Frederick Draheim. On April 12, 1948, Sheppard was indicted in the same court for the crime of assault with intent to kill and murder William Leahy. Both causes were tried by the court without a jury. Defendant was found guilty of the two crimes and, for each offense, was sentenced to imprisonment in the penitentiary for a term of not less than three nor more than five years. Sheppard prosecuted two writs of error from this court to the criminal court. On January 19, 1949, the judgment in the Leahy case was reversed without remandment. (*People* v. *Sheppard,* 402 Ill. 347.) On the same day, the judgment in the Draheim case was affirmed (*People* v. *Sheppard,* 402 Ill. 411,) and a rehearing denied on March 15, 1949. Thereafter, on April 12, 1949, Sheppard filed in the criminal court of Cook County a motion in the nature of a motion for a writ of error *coram nobis* seeking a new trial. The cause was assigned to Hon. Daniel A. Roberts who presided at the trials resulting in judgments of conviction in both the Leahy and Draheim cases. Defendant sought a change of venue. His petition was denied. The People then interposed a motion to dismiss, averring that defendant's motion does not state facts, within the contemplation of the applicable statute, but merely conclusions; that defendant sought a review of evidence adduced upon his trial in the criminal court and, also, a review of certain incidents which happened during the course of the trial, and that the allegations did not constitute allegations of fact not known to

the court or which, if reviewed, would result in a different judgment. The proceedings in this court are also recounted in the People's motion. The motion to dismiss was sustained, judgment entered against Sheppard, and his motion dismissed. This appeal followed.

Initial consideration will be given to the complaint that the trial judge erroneously denied Sheppard's petition for a change of venue. The petition alleged that, because the trial judge was prejudiced against Sheppard, he could not expect a fair trial and hearing. Section 18 of the Venue Act (Ill. Rev. Stat. 1949, chap. 146, par. 18,) provides, so far as relevant, that when any defendant in an indictment or information in any court in this State shall fear he will not receive a fair and impartial trial in the court in which the case is pending, because the judge of the court is prejudiced against him, the court shall award a change of venue upon the application of the defendant. Section 1 of the same statute provides that a change of venue in any civil suit or proceeding in law or equity may be had where either party shall fear that he will not receive a fair trial in the court in which the suit or proceeding is pending, because the judge is prejudiced against him.

Defendant's point is that a mandatory duty rested upon the trial judge to grant a change of venue for either of two reasons, first, because section 18 of the Venue Act is applicable if the *coram nobis* proceeding be deemed a criminal case and, secondly, section 1 controls if the proceeding be deemed civil in its nature. The form of the petition was proper and it was presented in apt time. It does not follow, however, that a defendant's right to a change of venue in a *coram nobis* action is absolute. From the very nature of *coram nobis* proceedings, the errors sought to be corrected are errors of fact. The trial judge who heard the cause in the first instance presumably would know whether the facts sought to be presented in the supplementary proceeding are facts which were unknown to the

court at the time judgment was entered and which, if known, would have precluded the entry of judgment. A reasonable construction of section 72 of the Civil Practice Act, to the extent it provides that all errors in fact, committed in the proceedings of any court of record, and which, by the common law, could have been corrected by the writ of error *coram nobis,* "may be corrected by the court in which the error was committed," is that the motion in the nature of a writ of error *coram nobis* should be presented to the same judge who rendered the original judgment. As observed in *McGrath & Swanson Construction Co.* v. *Chicago Railways Co.* 252 Ill. App. 479, "That the errors to be corrected under the writ were errors of fact would seem to require that the writ should be brought before the same judge who rendered the original judgment, for he only would know whether or not he was ignorant of the fact which if known would have prevented the judgment." In *Chapman* v. *North American Life Ins. Co.* 292 Ill. 179, this court said: "At common law the writ of error *coram nobis* could be sued out of the same court when a judgment at law was rendered to reverse the judgment, and before the same judge who rendered the judgment, for an error of fact that might be brought to the knowledge of the court that would be sufficient, of itself, to defeat the judgment." See: 1 Holdsworth's History of English Law, p. 224; 1 Black on Judgments, sec. 300; 49 C.J.S., Judgments, sec. 316. The reasons which required the old common-law writ to be presented to the same judge who rendered the original judgment obtain with like force under section 72 of the Civil Practice Act. Accordingly, neither sections 1 nor 18 of the Venue Act is applicable to *coram nobis* proceedings. Defendant's petition for a change of venue was properly denied.

In passing upon a similar question, the court, in *Gilman* v. *Donovan,* 59 Iowa 76, observed, "The proceeding is not in the nature of a new or independent action, but is supple-

mentary and intended to correct errors committed in the trial of a cause and the rendition of the judgment. It is of the same character as all proceedings for new trials, the correction of records, etc., wherein the court committing the errors corrects them. In' this proceeding the law requires the very court rendering judgment to review its decision; the case cannot therefore be transferred to another court for that purpose." In *State* v. *Gentry,* 223 Ind. 535, the court said, "The judge who tried the original action is by experience and knowledge of the proceedings in the original action peculiarly fitted to try any issues which may be raised concerning the judgment which he has entered. He was accepted as an impartial judge either by failure to take a change, by failure to show a sufficient reason for a change, or because of a change having been granted. In any event his position is that of an impartial judge and when he is available certainly no change should be permitted in the *coram nobis* proceeding which follows." See: 161 A.L.R. 540.

Detailed narration of all the facts alleged in the principal motion would serve no useful purpose. The essential facts adduced upon the trial are recounted fully in our opinion in *People* v. *Sheppard,* 402 Ill. 411. Defendant's motion is very long and alleges, as disclosed by the portion of his brief captioned "Argument," "It must have been apparent to this court when this matter was originally presented to it, that many things had been neglected in the trial court in the trial of this cause. It must also have been apparent that the defendant was not properly cared for by his then counsel in the hearing." The exhaustive motion filed by Sheppard alleges that he was unaware of the existence of certain material facts which have come to his attention and knowledge since the trial. Illustrative allegations are that defendant operated a hotel or rooming house at 717 North Clark Street under a lease assigned to him two years earlier; that, previously, the hotel had been operated

as an assignation house but that defendant stopped this practice immediately, causing a general change in the character of his residential guests; that the hotel is located within two city blocks of a police station; that defendant had refused all solicitations of the police to contribute financial aid to various organizations and individuals; that he had encountered difficulty with the officers assigned to this particular station prior to September, 1947; that, among the persons present on the sidewalk in front of the hotel premises on the morning of September 14, 1947, described as "the morning of the disturbance," were four former tenants whom defendant had evicted from the hotel for just cause; that officers from the police station were summoned and appeared at his hotel on the day of the occurrence; that a policeman who appeared about 10:30 the preceding evening claimed someone had thrown water out of an upper story window while he was standing on the curb; that there was a commotion or disturbance in the hotel during the night; that, the next morning, September 14, Draheim, the complaining witness, repeatedly directed vile epithets to defendant; that when the latter fired his rifle he aimed at the door jamb which he hit about three inches from the side of the wall; that Draheim was not touched by any bullet, and that when he returned forty-five minutes later, accompanied by a police officer, his trousers were torn as if cut with a razor. In this connection, Sheppard directs attention to the doctor's testimony given upon the trial showing that the wounds were superficial "and in all probability contained no metal of any kind but scraps of dirt which might have come from any source." Other allegations are to the effect that, from the date he opened his hotel, the police of the district had been trying "to shake him down," and that Draheim first refused to file a complaint against him but that an officer seized him, saying, "Come on and swear out a warrant" and "walked" him over to the station, a single block distant.

Defendant filed as a part of his motion the abstracts of record in both *People* v. *Sheppard,* 402 Ill. 347, and *People* v. *Sheppard,* 402 Ill. 411.

The purpose of the writ of error *coram nobis* at common law, and of the motion substituted for it by section 72 of the Civil Practice Act, is to bring before the court rendering the judgment matters of fact not appearing of record, which, if known at the time the judgment was rendered, would have prevented its rendition. (*People* v. *Touhy,* 397 Ill. 19; *Guth* v. *People,* 402 Ill. 286; *People* v. *Gleitsman,* 396 Ill. 499.) Particularly illustrative of the character of matters of fact not appearing of record are the disability of the parties to sue or defend, the failure of the clerk to file a plea or answer, and the omission to interpose, through fraud, duress or excusable mistake and without excusable negligence on the part of the defendant, a valid defense existing in the facts in the case. (*Hall* v. *People,* 402 Ill. 478; *People* v. *Dugan,* 401 Ill. 442.) Neither the common-law writ of error *coram nobis* nor its statutory substitute in Illinois lies, however, to determine a factual question which has been adjudicated, even though decided wrongly, to correct alleged false testimony, or for newly discovered evidence. (*People* v. *Gleitsman,* 396 Ill. 499; *People* v. *Drysch,* 311 Ill. 342.) Again, the alleged incompetence of counsel upon the trial may be reviewed upon writ of error, but the issue is not open to consideration in a proceeding of this kind. (*Hall* v. *People,* 402 Ill. 478; *Thompson* v. *People,* 398 Ill. 366; *People* v. *Gleitsman,* 396 Ill. 499.

Here, defendant challenges the sufficiency of the evidence upon the trial resulting in his conviction, as he did upon the writ of error, and, by his motion, makes allegations of additional facts not properly before the court in a *coram nobis* proceeding. His point is that these facts were unavailable through someone's oversight or lack of knowledge, or his attorney's incompetence. Assuredly, the facts

alleged are far from adequate to constitute a defense to the crime charged against him. No single fact alleged, if proved, shows or even tends to show, that his conviction was obtained through fraud, duress, or where, by excusable mistake or ignorance on his part, he was deprived of a defense he could have interposed at the trial and which, if known by the court, would have prevented the rendition of the judgment of conviction. Charitably construed, by this proceeding, defendant is seeking a second review of the record and is, for all practical purposes, presenting a second petition for rehearing in *People* v. *Sheppard*, 402 Ill. 411. This, the motion in the nature of a writ of error *coram nobis* under section 72 of the Civil Practice Act was never designed to accomplish.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*