THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE KEENER, Defendant-Appellant.

Second District    No. 2—93—1081

Opinion filed September 6, 1995.

2

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, Michael J. Pelletier, of State Appellate Defender's Office, of Chicago, and Fe Fernandez, of Evanston, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Bruce Keener, appeals the order dismissing his post-conviction petition (see 725 ILCS 5/122—2.1(a)(2) (West 1992)). Defendant was convicted of home invasion, armed robbery, and residential burglary. He appealed directly to this court. During the pendency of that appeal, defendant filed a post-trial motion pursuant to section 2—1401 of the Civil Practice Law (see 735 ILCS 5/2—1401 (West 1992)). Defendant appealed the denial of this motion. Judge Peter Trobe presided over both the trial and post-trial motion. This court, *sua sponte*, consolidated both appeals and affirmed Judge Trobe. (See *People v. Keener* (2d Dist. April 22, 1993), Nos. 2—91—0748, 2—92—0165 cons. (unpublished order under Supreme Court Rule 23) (remanding cause solely for correction of mittimus to show judgment was never entered on the lesser included offense of home invasion).) Following the issuance of our order affirming defendant's conviction and denying his post-trial motion, defendant filed the post-conviction petition at issue in the present case. Judge Raymond McKoski heard and dismissed the petition.

Defendant contends Judge McKoski erred by (1) dismissing the petition alleging ineffective assistance of counsel due to counsel's failure to file a motion to suppress identification even though the record and petition presented a meritorious claim; (2) dismissing the peti-

tion based on waiver; and (3) ruling on the petition even though there was no allegation Judge Trobe was prejudiced against defendant. We affirm.

Our previous order sufficiently summarizes the circumstances of the conviction and sentence. We will discuss only those facts relevant to defendant's ineffective assistance of counsel argument. We note in his petition defendant alleged his trial counsel failed to investigate latent fingerprints found on the victim's automobile; additionally, defendant alleged the cumulative effect of trial counsel's shortcomings deprived defendant of due process under the fourteenth amendment. On appeal defendant only pursues trial counsel's failure to file a motion to suppress identification. We will not, therefore, address the other constitutional violations alleged in the petition.

The victim, Toni Frydman, identified defendant at two photo showups and during the trial. The residential burglary occurred on October 22, 1990. Frydman testified that on October 29, 1990, Buffalo Grove police officers presented her with approximately 10 photographs of suspects. Frydman picked out the photograph of the individual she believed burglarized her home. The individual depicted in the photograph was not defendant. The individual in the photograph was clean-shaven. Frydman testified the person who burglarized her home was also clean-shaven. Frydman also testified she told the police officers that the person whose photograph she had identified was "younger than I thought and much stockier also."

Buffalo Grove police officers showed Frydman a videotape on November 1, 1990. A person was depicted in the videotape. Frydman testified she told the police officers the person depicted in the videotape was not the individual who burglarized her home.

Frydman picked out a photograph of defendant on November 27, 1990, in her home. The police officers presented Frydman with "25 or more" photographs. She looked through the photographs one at a time. Among the photographs was a picture of defendant. This picture measured approximately three inches by three inches. It depicted a smaller photograph of defendant. This smaller photograph had been cropped by placing it in crude white matte. The actual portion of the picture depicting defendant measured approximately $1^1/_8$ inches by $2^1/_4$ inches. In the picture defendant had a mustache. Frydman testified that after looking once through the photographs she picked out the picture of defendant.

At a later photo showup Frydman again picked out a photograph of defendant. This showup took place on December 6, 1990, in Frydman's home. Frydman was presented with four photographs. Among these was a photograph of defendant. The photograph appeared to be

the original of the matted photograph Frydman picked out during the November photo showup. This photograph measured approximately $3^3/4$ inches by $2^3/4$ inches. It was lighter and clearer than the photograph of defendant used during the November photo showup. The police officers laid the four photographs out on the table. Frydman testified that the police officers "had a lot of interesting—just a lot of information to tell me." Frydman was not cross-examined concerning the nature of these communications between Frydman and the police officers. Frydman picked out the photograph of defendant.

Frydman then identified defendant in court. Defense counsel did not object to the in-court identification. Frydman testified the person who burglarized her home was "dressed as a construction worker." She stated the individual was wearing a hard hat, wire-rim glasses, and a blue lightweight jacket.

Defendant's former roommate, Robert Cannan, testified for the State. Cannan testified he had never seen defendant without a mustache until October 16, 1990. On October 16, 1990, according to Cannan's testimony, defendant shaved off his mustache. Cannan also testified defendant had asked Cannan to participate in "a couple of home invasions and some burglaries." Cannan testified that on either October 16 or 17, 1990, he saw defendant dressed as a construction worker. Cannan testified defendant wore a blue denim jacket, a white hard hat, and wire-rimmed glasses. Cannan testified defendant owed him $400. On October 20, 1990, Cannan moved out of defendant's apartment. He stated that after moving out he attempted to collect the $400 by speaking with the defendant's mother. On approximately October 23, 1990, Cannan read a newspaper article describing the burglary of Frydman's home. Cannan contacted the Buffalo Grove police department concerning the burglary on December 3, 1990. He stated he was afraid he would be implicated as an accomplice if he did not come forward.

Cannan was subjected to extensive cross-examination. Cannan admitted to being a heroin addict for "[a] couple of months." Cannan stated he stopped using heroin without assistance in July or August 1990. Cannan also admitted to having been convicted of possession or delivery of a controlled substance in 1977. In 1979, he was convicted of two counts of aggravated battery, burglary, and violation of felony probation. Cannan testified he had been angry with defendant over the $400 debt; Cannan stated he was "not happy with all the shit [defendant] pulled." Cannan also admitted he had attempted to collect the $400 debt after reading the article about the Frydman burglary. The preceding summary of facts was taken from the common-law record and the report of proceedings.

Defendant's *pro se* petition alleged he was denied the effective assistance of counsel. In support of this allegation, the petition contained the following:

"(i) The defendant [*sic*] trial counsel failed to file a motion to suppress identification.

(ii) The indentification [*sic*] in the present case at bar was suggestive and doubt [*sic*] and vague at best.

(iii) The victim was showed [*sic*] an aray [*sic*] of photographs on October 29, 1990, and the victim picked out a man's photo that wasn't the defendant. ***

(iv) The defendant contends the indentification [*sic*] was influenced and tainted by the police officer and high [*sic*] suggestive. ***

(v) The in-court-indentification [*sic*] was highly suggestive and improper. Counsel for the defendant failed to properly file a pretrial motion to suppress indentification [*sic*]."

The petition was signed "[a]ffiant, Bruce Keener." No actual affidavits were attached to the petition. Appended to the petition were four pages of Frydman's testimony on cross-examination.

We first examine whether Judge McKoski erred in dismissing the petition based on waiver. In his order of August 8, 1993, Judge McKoski determined defendant's failure to raise the ineffective-assistance-of-counsel claim either in his initial post-trial motion or on direct appeal constituted a waiver. Waiver of defendant's ineffective-assistance claim in the context of the post-trial motion and the direct appeal implicates different legal questions. We will, therefore, address each separately.

■ We determine that defendant did not waive his sixth amendment argument by failing to raise it in the post-trial motion. A *per se* conflict of interest arises when attorneys argue motions in which they allege their own ineffectiveness. (See *People v. Willis* (1985), 134 Ill. App. 3d 123, 129-30 (counsel arguing his own ineffectiveness in support of motion to withdraw a guilty plea is, *per se*, subject to a conflict of interest).) In such situations defendants do not waive ineffective-assistance claims. (See *People v. Flores* (1992), 153 Ill. 2d 264, 275.) The post-trial motion was prepared and presented by the same attorney who represented defendant during the trial. Defendant, therefore, did not waive the ineffective-assistance claim by not raising it in the post-trial motion.

In general, all matters which could have been raised on direct appeal are procedurally barred and may not be considered in subsequent proceedings. (*People v. Albanese* (1988), 125 Ill. 2d 100, 105-06.) The procedural bar may be relaxed only when (1) a defendant offers infor-

mation *dehors* the record; (2) that information supports a previously unmade claim; and (3) the information also explains why the claim it supports could not have been raised on direct appeal. (See *People v. Erickson* (1994), 161 Ill. 2d 82, 87-88.) An ineffective-assistance claim will not be barred if "what ought to have been done *** depend[s] on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation." (*Erickson*, 161 Ill. 2d at 88.) If, however, the post-conviction petition and the affidavits do nothing more than recite matters contained in the record relating to the alleged ineffectiveness of counsel, the ineffective-assistance claim will be barred. *Erickson*, 161 Ill. 2d at 89 (ineffective-assistance claim waived when counsel's failure to verify expert's credentials was made evident during the State's cross-examination of the expert); see also *People v. Jones* (1985), 109 Ill. 2d 19, 23-24 (in appeal of post-conviction petition, when evidence needed to show effectiveness or ineffectiveness of trial counsel was contained in original appellate record, the defendant waived his ineffective-assistance claim).

■ The original appellate record was sufficient to support an argument that defendant's trial attorney may have been ineffective in handling Frydman's identification and testimony. Attorneys representing clients before the appellate courts are presumed to have knowledge of the contents of the record. (See, *e.g.*, *Barth v. Reagan* (1990), 139 Ill. 2d 399, 406 (attorneys must exercise a reasonable degree of care and skill in representing their clients); *In re Fox* (1988), 122 Ill. 2d. 402, 409 (attorneys must represent clients with zeal and diligence).) Defendant's counsel in the first appeal, therefore, was aware Frydman had identified a person other than defendant during the October photo showup. Appellate counsel was aware that while conducting the December photo showup the Buffalo Grove police officers may have made suggestive comments to Frydman (as Frydman said, the police officers "had a lot of interesting—just a lot of information to tell me"). Appellate counsel was aware Cannan—who testified defendant shaved off his mustache six days before the burglary—by his own admission had been (1) a heroin addict two months before the burglary; (2) angry with defendant because he did not repay the $400 debt; (3) sentenced to $3^1/_2$ years' imprisonment for burglary in 1979; and (4) asked by defendant to participate in home invasions and burglaries. In light of the aforementioned potential problems with Frydman's identification of defendant, the original appellate record presents a possible ineffective-assistance claim based on the trial attorney's failure to (1) file a motion to suppress identification; (2) question Frydman about the communications be-

tween herself and the police officers during the December photo showup; and (3) object to, or move to strike, Frydman's in-court identification. These failings may have been exacerbated considering Cannan's less than stellar standing as a witness.

Therefore, we determine defendant waived his ineffective-assistance claim by failing to raise it during his first appeal. Defendant's petition contains nothing more than a recitation of matters contained in the record and legal conclusions concerning the importance of such matters. Based on our examination of the original appellate record, we find all of the matters discussed above could have been raised by the appellate counsel on direct appeal. They were not. Defendant, therefore, has waived his ineffective-assistance claim. Nothing in the preceding analysis should be construed as holding defendant was denied his right to effective assistance of counsel under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, or *People v. Albanese* (1984), 104 Ill. 2d 504. We merely hold that any ineffective-assistance claims premised on Frydman's identification of defendant are waived.

■ Defendant next contends Judge McKoski should not have heard the petition because there was no allegation Judge Trobe was prejudiced against defendant. Essentially, defendant argues post-conviction petitions must be heard by the original trial judge. In support of this argument defendant cites several cases. All of these cases are either inapplicable or distinguishable from the present case.

Defendant claims *People v. Griffin* (1985), 109 Ill. 2d 293, holds that the judge who presided at trial must hear a post-conviction petition and determine the credibility of the witnesses and assign weight to their testimony. *Griffin* is distinguishable from the present case. *Griffin* involved testimony taken during a hearing on a post-conviction petition which highlighted discrepancies in the evidence heard at trial. No evidence was taken in the present case. The *Griffin* court stated "it was for the judge at the post-conviction hearing, *who had presided at the defendant's jury trial,* to pass on the defendant's credibility and decide what weight to give to his different testimony." (Emphasis added.) (*Griffin,* 109 Ill. 2d at 305-06.) The emphasized statement is the rationale for having the trial judge, not the supreme court, determine the credibility issue. The statement, therefore, does not support defendant's call for a *per se* rule requiring each post-conviction petition to be heard by the original trial judge.

Defendant also asserts *People v. Mamolella* (1969), 42 Ill. 2d 69, *People v. Sheppard* (1950), 405 Ill. 79, and their progeny (see, *e.g.,* *People v. Neal* (1984), 123 Ill. App. 3d 148) require trial judges to hear post-conviction petitions absent allegations of prejudice. Defendant

misconstrues this line of cases. *Sheppard* involved a defendant who filed a motion for a writ of error *coram nobis* seeking a new trial. The supreme court concluded "that the motion in the nature of a writ of error *coram nobis* should be presented to the same judge who rendered the original judgment." (Emphasis in original.) (*Sheppard,* 405 Ill. at 82.) The court did not say such motions "must" be heard by the original trial judge; the court only said the trial judge "should" hear such motions. Additionally, the *Sheppard* court based its conclusion on its construction of a portion of section 72 of the Civil Practice Act. That portion provided "all errors *** which, by the common law, could have been corrected by the writ of error *coram nobis,* '*may* be corrected by the court in which the error was committed.' " (Emphasis added.) (*Sheppard,* 405 Ill. at 82, quoting Ill. Rev. Stat. 1949, ch. 110, par. 72.) The court's conclusion in *Sheppard,* like the statute on which it was based, was couched in permissive rather than mandatory terms.

In *Mamolella,* it was argued the trial judge should have granted the defendant a change of venue for the hearing on the post-conviction petition. The supreme court stated "[i]n the absence of a showing that defendant would be substantially prejudiced, the post-conviction petition *should* be heard by the same judge who rendered the original judgment. *People v. Sheppard,* 405 Ill. 79." (Emphasis added.) (*Mamolella,* 42 Ill. 2d at 73.) As in *Sheppard,* the court spoke in a permissive, not a mandatory, voice.

*Mamolella, Sheppard,* and their progeny do not support defendant's contention. At most, these cases express a preference that if possible post-conviction petitions should be assigned to the original trial judges. (See *State Bank of Clearing v. Fair Winds, Inc.* (1979), 73 Ill. App. 3d 597, 599 (stating, in discussing the predecessor to section 2—1401 of the Civil Practice Act, the petition should "preferably" be heard by the original trial judge but other judges also have jurisdiction over such petitions).) Defendant has failed to cite, and our research has not revealed, a single case expressly endorsing the *per se* rule espoused by defendant.

Finally, defendant argues *People v. Joseph* (1986), 113 Ill. 2d 36, mandates that original trial judges hear all post-conviction petitions. We disagree. *Joseph* held unconstitutional section 122—8 of the Code of Criminal Procedure of 1963. (*Joseph,* 113 Ill. 2d at 39-48; see 725 ILCS 5/122—8 (West 1992).) Section 122—8 required all post-conviction petitions be heard by a judge other than the original trial judge. (725 ILCS 5/122—8 (West 1992).) The supreme court held that this requirement encroached upon a fundamental judicial prerogative. (*Joseph,* 113 Ill. 2d at 43-44.) The legislature had infringed on

the court's inherent general administrative authority as vested in the chief judge of each circuit. (*Joseph*, 113 Ill. 2d at 47 (chief judges, by supreme court rule, have the authority to enter general orders, including orders for assignment of judges).) As such, section 122—8 violated the separation-of-powers clause of the Illinois Constitution. (*Joseph*, 113 Ill. 2d at 44; see Ill. Const. 1970, art. II, § 1.) The *holding* in *Joseph* was completely unrelated to the procedural and substantive requirements of the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1992)). The conclusion, therefore, that the supreme court intended each post-conviction petition be heard by the original trial judge does not follow from the premise it is unconstitutional for the legislature to require each petition be heard by a judge other than the original trial judge. Indeed, courts have expressly interpreted *Joseph* as not holding that all petitions must be assigned to the original trial judge. (See, *e.g.*, *People v. McNeal* (1989), 180 Ill. App. 3d 988, 991.) We also note the Illinois Supreme Court in the course of the *Joseph* opinion never addressed the manner in which circuit judges should assign post-conviction petitions.

A rule requiring the assignment of each post-conviction petition to the original trial judge would be of minimal benefit. Post-conviction petitions are often filed years after the date of conviction (see 725 ILCS Ann. 5/122—1 (West Supp. 1995) (petition may be filed as long as three years after conviction)). In an ideal world, all post-conviction petitions could be heard by the same judge who presided at the trial. However, judges cannot be expected to recall the nature of testimony they may have heard years before. Trial judges will not often enough remember subtleties from testimony. Furthermore, these subtleties will not be remembered with the frequency needed to justify the imposition of the *per se* rule advocated by defendant. Indeed, unlike the present case, many meritorious post-conviction petitions will assert constitutional questions raised by facts beyond the record. In theory, therefore, any judge may evaluate the validity of such claims. *People v. Farmer* (1986), 148 Ill. App. 3d 723, 729.

The marshalling of judicial resources also militates against imposing a *per se* rule. Conserving the finite resources of the courts is a proper consideration in determining the manner in which the judicial system and its litigants conduct themselves. (See *In re Marriage of Schlam* (1995), 271 Ill. App. 3d 788, 797 (discussing the underlying rationale of the waiver doctrine).) The original trial judge is often unavailable by the time a post-conviction petition is brought. Under defendant's *per se* rule, a post-conviction petition would have to wait until the original trial judge became available. This would unnecessarily delay the functioning of the criminal justice system. Addition-

ally, judges are often reassigned to new duties between the time defendants are convicted and their post-conviction petitions are filed. Under a *per se* rule, original trial judges would be required to leave their new assignments to rule on these petitions. Delays caused by the *per se* rule, therefore, could spill over into the civil docket.

We find that the minimal benefit of a *per se* rule does not justify the attendant expense and inevitable waste of finite judicial resources, and we hold that defendant does not have a right to have his petition heard by the judge who presided over the original trial, Judge Trobe. In reaching this conclusion we join in the express holdings of three of the five appellate districts. (*McNeal*, 180 Ill. App. 3d at 991 (first district 1989); *People v. Kimbrough* (1st Dist. 1988), 178 Ill. App. 3d 445, 447-48; *People v. Robinson* (3d Dist. 1987), 160 Ill. App. 3d 366, 369-70; *Farmer*, 148 Ill. App. 3d at 729 (fourth district 1986).) Judge McKoski, therefore, did not err in ruling on defendant's petition.

For the foregoing reasons the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN, P.J., and DOYLE, J., concur.