NO. 4-95-0279

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Appeal from

          Plaintiff-Appellee,           )   Circuit Court of

          v.                            )   Adams County

NATHANIEL PARKER, JR.,                  )   No. 94CF282

          Defendant-Appellant.          )

                                        )   Honorable

                                        )   Dennis K. Cashman,

                                        )   Judge Presiding.

_________________________________________________________________

          JUSTICE KNECHT delivered the opinion of the court:

          After a jury trial in Adams County circuit court, de-

fendant, Nathaniel Parker, Jr., was convicted of aggravated bat-

tery with a firearm in violation of section 12-4.2 of the Crimi-

nal Code of 1961 (720 ILCS 5/12-4.2 (West 1994)).  He was sen-

tenced to a term of 25 years' imprisonment in the Illinois De-

partment of Corrections (DOC).  Following denial of his motion

for reduction of sentence, defendant has appealed (1) alleging

ineffective assistance of counsel for failure to tender a jury

instruction for included offenses and (2) contending the length

of his sentence was excessive.  We affirm.

          Monique Clay and Sharnell Shaw testified at defendant's

trial.  The two stood talking near a car parked in front of a

friend's home on Ninth Street in Quincy at approximately 2:30

a.m. on July 31, 1994.  Monique stated she noticed five or six

males, including defendant, Michael Milsap, and Carl Steele, ap-

proaching her location on Ninth Street from the alley intersect-

ing Ninth Street nearby.  About that same time both Monique and

Sharnell saw a disturbance about two blocks down Ninth Street and

started to run to see what was going on there.  Monique was be-

hind Sharnell while they were running.  When they had run about

one block, Monique turned around and saw defendant holding a

long-barrelled gun, and when he fired, he was pointing it at

Sharnell.  The streetlights were bright, and she had no trouble

seeing defendant and his actions.

          Both Monique and Sharnell heard someone yell, "There he

is.  You're busted."  Then they both heard a gunshot.  Sharnell

felt a burning sensation in his back and saw he was bleeding.  He

did not realize he was shot, however, until he arrived at his

aunt's house, a short distance from the shooting.  She told him

he was shot and took him to the emergency room where pellets were

removed from his back, head, hand, arm, and buttocks.

          The State also called Michael Milsap as a witness. 

Milsap testified he had known defendant for a long time.  During

the evening of July 30, 1994, into the early morning hours of

July 31, Milsap had been at a party at a social center in the

neighborhood near the location of the shooting.  There was a

large group of friends there, including Carl Steele and defen-

dant.  During the course of the party, the group drank a keg of

beer.  Milsap then denied seeing the shooting but admitted he

gave a taped statement to the police the day after the shooting. 

The tape was then played for the jury.

          In the taped statement Milsap stated he left the party

with defendant and some other men and started walking down an

alley as a group.  Defendant picked up a shotgun from behind some

bushes because another group from Joliet were trying "to roll up

on" Milsap, defendant and the others in their group.  While they

were walking, they noticed someone running "away" from their

group.  This made them suspicious, and defendant fired the shot-

gun at the running figure.  No one else in the group had a fire-

arm.  The person defendant shot kept running.  Milsap, defendant

and other members of the group split up and ran away.

          The State next called Carl Steele.  Steele also had

known defendant for a long time and was a good friend of his. 

Steele admitted he heard gunshots but denied seeing anything.  He

also admitted to giving a taped statement to the police on the

day of the shooting.  The tape was played to the jury.  In that

statement Steele stated defendant had been at his house earlier

on the evening of the shooting and Steele saw him at the party at

the social center with some friends, including Milsap.  When the

group of friends left, Steele caught up with them.  He saw defen-

dant run ahead and pick up a shotgun from some bushes or tall

grass.  He stated defendant had hidden the shotgun before because

he was concerned about men named Ramone, Titus, and Henry.  While

the group was walking down an alley, Steele noticed defendant

standing by a tree.  A little boy ran away and defendant shot him

because he thought he looked like his adversary, Henry.  Steele

stated that, after defendant shot the person, he stated, "I think

I got him.  I think I got him."  The group then ran away.  Steele

stated the boy who was shot did not do anything of a threatening

nature toward defendant or the group.

          Both Milsap and Steele were called as witnesses for the

defense and stated their taped statements were the result of

coercion by the police.  Milsap first told the police he did not

know who shot the gun.  He then admitted telling the police de-

fendant picked up the shotgun out of the bushes but did so only

because the police "was going to bring me up on charges."  Steele

stated he was taken to the police station around 6 a.m. on the

date of the incident and handcuffed to a wall.  He was not re-

leased from the handcuffs until about noon when the police inter-

viewed him.  He stated he made a statement, was accused of lying,

and then changed his statement to the taped version.

          A police detective was called by the State in rebuttal

and testified Steele's handcuffs were removed around 8 a.m. 

Further, on the tapes of the statements, both Milsap and Steele

were asked if they had been allowed to use the rest room and get

soft drinks and both said they had.  Each was also asked if any

threats or promises had been made to him in exchange for his

statements and each denied any coercion on the tape.

          On this evidence, the jury returned a guilty verdict,

and defendant was later sentenced to 25 years' imprisonment. 

Defendant contends he received ineffective assistance of counsel

because trial counsel failed to tender instructions for included

offenses, which he suggests are reckless conduct, aggravated dis-

charge of a firearm or reckless discharge of a firearm.  He fur-

ther contends he should receive a new trial because the trial

court failed to sua sponte instruct on those offenses.

          The State contends any error regarding the issue of

failure to instruct on included offenses has been waived.  To

preserve an issue for appeal, the issue is required to be raised

both by an objection during trial and in a post-trial motion. 

People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130

(1988).  In this case, the issue was not raised either at trial

or in defendant's post-trial motion.  The State asserts the issue

does not amount to plain error, which allows an issue to be con-

sidered despite being otherwise waived.  

          We find that portion of the issue relating to the fail-

ure of the trial court on its own to instruct on included offens-

es has been waived.  However, that portion of the issue relating

to ineffective assistance of trial counsel for failure to tender

any instructions on included offenses has not been waived.  We

agree with the reasoning in People v. Keener, 275 Ill. App. 3d 1,

5, 655 N.E.2d 294, 297 (1995), in which the second district held

there was a per se conflict of interest in requiring trial coun-

sel filing a post-trial motion to assert his or her own ineffec-

tiveness and, therefore, failure to do so does not result in

waiver of the issue on appeal.  

          This district has previously held the failure to raise

the issue of ineffective assistance of counsel in a post-trial

motion waives the issue on appeal.  People v. Keys, 195 Ill. App.

3d 370, 376, 552 N.E.2d 285, 289 (1990).  The decision in Keys

relied upon that in Enoch.  However, the facts in Keys make it

distinguishable from the instant case.  Keys involved an attorney

who did not make a demand for a speedy trial but who withdrew

from the case prior to trial.  Another attorney was appointed to

represent the defendant.  The second attorney tried the case and

brought the post-trial motion that failed to allege the ineffec-

tiveness of the first attorney for failure to demand a speedy

trial.  There was no conflict of interest involved in the second

attorney making a claim the first attorney was ineffective for

his failure to make a speedy trial demand.

          The facts in this case, however, are similar to those

in Keener because the same attorney would be required to raise

the issue of his own ineffectiveness in a post-trial motion or

find the issue to be waived.  This is clearly a conflict of in-

terest, and the failure to raise the issue does not result in de-

fendant waiving the issue of ineffectiveness of trial counsel.

          The issue of ineffectiveness of trial counsel is prop-

erly before this court.  However, we find trial counsel was not

ineffective in this case for failure to tender jury instructions

on included offenses.

          Under Strickland v. Washington, 466 U.S. 668, 687, 80

L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984), a court must

consider two issues when evaluating a defendant's claim of inef-

fective assistance of counsel:  (1) whether trial counsel's ac-

tion fell below an objective standard of reasonableness, and (2)

whether a reasonable probability existed that, but for counsel's

errors, the outcome of the trial would have been different. 

Alleged incompetency arising from a matter of trial tactics or

strategy will not support a claim of ineffective representation. 

People v. Gacy, 103 Ill. 2d 1, 95, 468 N.E.2d 1171, 1212 (1984);

People v. Haywood, 82 Ill. 2d 540, 543-44, 413 N.E.2d 410, 412 

(1980).  Competency of counsel is presumed, and the presumption

can only be overcome by strong and convincing proof.  People v.

Stewart, 101 Ill. 2d 470, 492, 463 N.E.2d 677, 688 (1984).

          Defendant argues the failure of counsel to tender prop-

er jury instructions can constitute ineffective assistance of

counsel.  See People v. Howard, 232 Ill. App. 3d 386, 391, 597

N.E.2d 703, 707 (1992).  He also contends the offense of reckless

conduct may be an included offense of aggravated battery with a

firearm and where there is evidence in the record that would re-

duce the crime to an included offense, an instruction on the

lesser offense should be given.  People v. Roberts, 265 Ill. App.

3d 400, 402-03, 638 N.E.2d 359, 361 (1994); People v. Smith, 261

Ill. App. 3d 117, 119, 633 N.E.2d 69, 71 (1994). 

          Defendant argues both Milsap and Steele testified he

did not intend to cause harm to Sharnell but intended to harm

someone from Joliet named Henry.  Defendant contends there is no

proof of the intent necessary to sustain a conviction for aggra-

vated battery with a firearm but, because he discharged a firearm

in the direction of a person, there is evidence to sustain a

conviction for reckless conduct or aggravated discharge of a

firearm.  See 720 ILCS 5/12-5, 24-1.2(a)(2) (West 1994).  

          Defendant is confusing motive with intent.  The evi-

dence indicated defendant fired a shotgun at Sharnell.  In doing

so, he intentionally caused great bodily harm to Sharnell.  This

is the definition of aggravated battery.  See 720 ILCS 5/12-4

(West 1994).  Criminal liability is not lessened because defen-

dant wanted to harm Henry from Joliet and mistook Sharnell for

Henry.  When defendant fired his shotgun at the running person,

he intended great bodily harm to that person.  The evidence did

not support a jury instruction for either reckless conduct or

aggravated discharge of a firearm, and it would have been futile

for defendant's trial counsel to tender such instructions.  Fail-

ure to tender the instructions is not ineffective assistance of

trial counsel.

          Defendant next argues his sentence is excessive.  He

was sentenced to a term of 25 years in DOC.  Defendant was con-

victed of aggravated battery with a firearm, a Class X felony

carrying a sentence of from 6 to 30 years.  720 ILCS 5/12-4.2(b)

(West 1994); 730 ILCS 5/5-8-1(a)(3) (West 1994).  The sentence

imposed is within the range provided by statute, but defendant

considers it excessive.  He contends the trial court did not take

into account his young age, 25; the fact his prior offenses were

mostly nonviolent; and the fact, according to defendant, Sharnell

was not seriously injured.  

          Defendant also alludes to other sentences in other

reported cases of convictions for aggravated battery with a fire-

arm and notes they were less than what he received here.  We will

not compare sentences received in other reported cases when the

argument of excessive sentence is raised.  People v. Bien, 277

Ill. App. 3d 744, 753-55, 661 N.E.2d 511, 518-19 (1996).

          A trial court's judgment as to the appropriate sentence

is entitled to deference, and a sentence may not be altered ab-

sent a showing the punishment imposed constituted an abuse of

discretion.  People v. Illgen, 145 Ill. 2d 353, 379, 583 N.E.2d

515, 526 (1991).  When factors in mitigation are presented and

argued to the sentencing judge, they are presumed to have been

considered, absent some showing to the contrary.  A lengthy sen-

tence does not mean mitigating factors were ignored.  People v.

Bradney, 170 Ill. App. 3d 839, 868, 525 N.E.2d 112, 131 (1988). 

          Although defendant was only 25 years old at the time of

sentencing, he had a lengthy criminal history that included a

battery conviction and revocation of probation for unlawful pos-

session of a controlled substance, which resulted in a two-year

sentence to DOC.  Defendant was on supervised release from that

sentence when he committed the current felony.  The presentence

report indicated defendant had other incidents of violence, in-

cluding while incarcerated awaiting trial on the current charge. 

Defendant had not taken advantage of opportunities previously

afforded him for rehabilitation in the matters of education and

employment.  

          The presentence report indicated defendant was a self-

centered, sociopathic and dangerous repeat offender.  His convic-

tion here was for intentionally shooting a young man in the back

with a shotgun.  A sentencing judge can properly consider a

defendant's prior criminal history and lack of remorse.  730 ILCS

5/5-5-3.2(a)(3) (West 1994); People v. McDade, 219 Ill. App. 3d

317, 331, 579 N.E.2d 1173, 1183 (1991).  In this case, defendant

had a lengthy criminal history and showed no remorse, claiming

mistake on his part in shooting the wrong person and not remorse

for shooting someone at all.  Another factor that may be consid-

ered is deterring others from committing the same crime.  730

ILCS 5/5-5-3.2(a)(7) (West 1994).  The trial court indicated a

familiarity with defendant and his family and friends and indi-

cated a need to deter others from the same kinds of activities

the court had tried but failed to deter defendant from commit-

ting.

          The trial court did not abuse its discretion in sen-

tencing defendant, and the judgment of the trial court is af-

firmed.

          Affirmed.

          McCULLOUGH and GREEN, JJ., concur.