Niels D. Frandsen, Marie J. Frandsen, Henning D. Frandsen, and Niels D. Frandsen for the Use and Benefit of Marie J. Frandsen, Jane Frandsen, a Minor, Karen Frandsen, a Minor, and Gayle Frandsen, a Minor, by Their Mother and Next Friend, Marie J. Frandsen, Plaintiffs-Appellees, v. John R. Anderson, et al., Doing Business as Morgan's Double O Tap, Also Known as Happy and John's Place, Edward S. Pratser, d/b/a Pratser's Silver Saddle and Edward S. Pratser and Rose V. Pratser, Robert C. Filwett, d/b/a The 440 Lounge and Anthony B. Jablonski and Frances Jablonski and/or Robert C. Filwett, and Clarence A. Honneman, d/b/a Starlite Inn and Rosten Walker, Defendants-Appellants.

Gen. No. 68--68.

Second District.

April 7, 1969.

Rehearing denied May 19, 1969.

Snyder, Clarke, Dalziel, Holmquist & Johnson, and Hall, Meyer, Fisher, Holmberg, Snook and May, of Waukegan, for appellants.

Diver, Diver, Brydges and Bollman, of Waukegan, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

This action involves the propriety of a section 72 (Ill Rev Stats 1967, c 110, par 72) petition, filed in this action by Gates W. Clancy, an attorney. He was not named as a party in the proceeding.

The original action arose out of an automobile accident which occurred in Lake County in November, 1962. The plaintiffs—Niels D. Frandsen, as driver, and his family, as passengers—were riding in the Frandsen car, which was involved in a collision with a car driven by John R. Anderson.

In September, 1963, the plaintiffs filed an amended complaint, which joined as additional defendants persons who allegedly sold intoxicating liquor to John R. Anderson on the date of the accident, or who owned some interest in the taverns in question. Among the additional defendants were Mary C. Morgan and Stanley Morgan, her husband (subsequently deceased), who were alleged to have been "owners in part, and contract sellers" of a certain tavern known as Morgan's Double O Tap. The contract purchasers of the tavern, John and Gladys Marie Fredericks, were also joined as defendants.

On November 12, 1963, Clancy filed his appearance for the Morgans, and also filed an answer to the amended complaint on their behalf, wherein it was admitted that the Morgans "were and still are the owners, in part, and contract sellers of the premises" in question.

On November 22, 1963, the plaintiffs filed a second amended complaint which joined additional dramshop defendants. The allegations in the second amended complaint, with reference to the Morgans, were identical with those made in the amended complaint, to which answer had been filed by Clancy, on their behalf. A copy of the second amended complaint was mailed to Clancy by the attorneys for the plaintiffs.

196

Clancy filed an answer thereto for some of the newly-joined defendants, but did not answer the second amended complaint on behalf of the Morgans.

On March 31, 1965, the Circuit Court of the Seventh Judicial Circuit, Sangamon County, entered an order restraining the Lincoln Casualty Company, its officers, agents, directors, employees and all other persons, from transacting any company business or disposing of its assets or property until further order of the court. Lincoln was the insurer for the Morgans.

On April 21, 1965, Clancy notified the Morgans by letter that Lincoln had been enjoined from conducting any further business; that, as the attorney retained by Lincoln, he could not further represent them in that case; and that, if they wished to have him continue to represent them, they should contact his office within thirty days concerning arrangements for the payment of his fees.

On June 7, 1965, Clancy asked leave to withdraw as attorney for the dramshop defendants whom he represented—including the Morgans. The court refused such request. Clancy then filed a motion to vacate the order of June 7, which recited the foregoing pertinent facts. On June 11, 1965, the court heard the motion to vacate, and refused the request because Clancy claimed an attorney's lien on his files and would not turn them over to other counsel for the dramshop defendants without an arrangement for paying his fees. Neither the Morgans, nor anyone on their behalf, requested their file and, after June 11, 1965, Clancy made no further appearance for them until February 9, 1968, when he filed the Section 72 petition in question.

On June 28, 1965, the driver of the other automobile and its owner were dismissed from the proceeding upon payment of $20,000 to Niels D. Frandsen and Marie J. Frandsen. In October of 1965, the remaining dramshop

defendants, other than the Morgans, were also dismissed, and the sum of $22,000, which was received from them, was allocated by the court to Niels D. Frandsen and Marie J. Frandsen, individually and as guardian of Jane, Karen and Gayle Frandsen, minors.

Counts III, IV, V and VI, of the second amended complaint, which related to the Morgans, prayed judgment against them and in favor of the following named plaintiffs, in the following amounts:

| | | |
|---|---|---|
| Niels D. Frandsen, for personal injuries, | $15,000; |
| Niels D. Frandsen, for property damage | $15,000; |
| Niels D. Frandsen, for the use and benefit of his wife, Marie J. Frandsen, and his three children, for loss of support, | $20,000; |
| Marie J. Frandsen, for personal injuries | $15,000. |

On February 9, 1966, the court entered a default judgment against the Morgans for failure to answer the second amended complaint, and on that date, evidence was offered before a jury, which assessed damages and returned verdicts in favor of the plaintiffs and against the defendants. These verdicts were reduced by the court, and judgment was entered against the Morgans and in favor of the plaintiffs, as follows:

| | |
|---|---|
| Niels D. Frandsen | $30,000; |
| Marie J. Frandsen | 15,000; |
| Marie J. Frandsen (for loss of support) | 5,000; |
| Jane Frandsen | 5,000; |
| Karen Frandsen | 5,000; |
| Gayle Frandsen | 5,000. |

On March 25, 1966, Attorney Charles M. May, who then represented Mary C. Morgan, wrote to Clancy, advising him of the default judgment and requested his

assistance in vacating the judgment. Clancy replied by letter which stated: "There is no responsibility insofar as this firm is concerned. The entire responsibility rests with the client failing to protect their rights, if any, based on notice previously given."

On April 7, 1966, May filed a section 72 petition on behalf of Mary Morgan asking that the default judgment be vacated and set aside. And, on April 8, 1966, May again wrote to Clancy, advised him of the hearing date on the petition and asked that he "be present at the hearing and present testimony that would be material to the issue." Clancy replied by letter dated April 12, which stated: "Your client chose to ignore our direction and is entirely responsible for any problem that now exists." The petition was amended, heard and denied on April 15, 1966, and Clancy did not attend the hearing. No appeal was ever taken from the order denying Mary Morgan's petition to vacate the judgment.

At the hearing, Attorney May pointed out "that there is a serious and substantial question that the Morgan's ownership or alleged ownership of this property puts them in a position whereby they could be held responsible under the Illinois Dram Shop Act."

On August 15, 1966, Mary Morgan filed a suit against Gates W. Clancy for malpractice arising out of the entry of judgment against her on February 9, 1966, and on February 9, 1968, Clancy filed a section 72 petition, as one of her attorneys of record, to set aside and vacate the judgment. This petition was heard and denied by order entered April 3, 1968. Clancy appealed from this order.

He urges that the issue on review is whether the status of the Morgans, as contract sellers, without either possession or control of the tavern, will support a judgment under the Dram Shop Act. However, we face several threshold issues which must be determined before we reach the issue presented by Clancy. They are:

199

1. Did Clancy have standing to bring the section 72 petition, and does he have standing to prosecute this appeal?
2. Did Clancy establish facts in the trial court showing that he was diligent in preventing the entry of the default judgment against the Morgans, and in presenting to the trial court a valid defense on their behalf?

Section 72 of the Civil Practice Act replaces and expands former section 72 of the Act. It prescribes one simple and comprehensive procedure, applicable alike to law, equity and statutory proceedings, by which, after thirty days, a litigant may seek to be relieved from a final judgment or decree for reasons that supported a motion under section 72 of the former Act, a bill of review, a bill in the nature of a bill of review, and other remedies abolished by revised section 72.

■ Subsection (1) of the section, abolished the common law and equitable procedures by which final judgment might formerly have been attacked in the trial court, and substituted a simple petition procedure. This subsection is intended to make applicable to actions of every nature, the post judgment relief available under writs of error coram nobis and coram vobis, writs of audita querela, bills of review, and bills in the nature of bills of review. Brockmeyer v. Duncan, 18 Ill2d 502, 505, 165 NE2d 294 (1960).

■ While the petition must be filed in the same proceeding in which the judgment order or decree was entered, it is not a continuation thereof, but rather, a new action. (Ill Rev Stats 1967, c 110, par 72(2) ; Brockmeyer v. Duncan, supra, 505.)

In Anderson v. Steger, 173 Ill 112, 117, 118, 50 NE 665 (1898) ; Jablonski v. People, 330 Ill App 422, 425, 71 NE 2d 361 (1947) ; and in People v. Nakielny, 279 Ill App 387, 395–397 incl. (1935), the court held that a writ of error or writ of error coram nobis can be brought only by a

person who was a party or privy to the record, or was injured by the judgment and who will derive benefit from its reversal, or who is competent to release error.

■ The ancient common-law writ of error coram nobis was used to bring to the attention of the court that entered the judgment, matters of fact which would have prevented its rendition had the true facts been known when the judgment was entered. Glenn v. People, 9 Ill2d 335, 340, 137 NE2d 336 (1956). Also see: SHA c 110, par 72, p 288.

The relief sought by Clancy under his section 72 petition was that which was formerly available under the petition for writ of error coram nobis. However, Clancy was not a party to the record; neither was he injured by the judgment, nor would he derive benefit from its reversal within the meaning of the law. He had no standing whatsoever to release error. Mary C. Morgan was the person who was injured by the judgment and would derive benefit from its reversal. She alone could release error.

In Orthwein v. Thomas, 127 Ill 554, 571, 572, 21 NE 430 (1889), the court held that parties to a decree are those only who are named as such in the record and are properly served with process, or enter their appearance; that a privy in blood or estate is one who derives his title to the property in question by descent or purchase; and that privy to a judgment or decree is one whose succession to rights of property thereby affected occurred after the institution of the particular action, and from a party thereto.

Orthwein has been cited with approval in Smith v. Bishop, 26 Ill2d 434, 437, 438, 439, 187 NE2d 217 (1963); Sweeting v. Campbell, 2 Ill2d 491, 496, 497, 119 NE2d 237 (1954); Schafer v. Robillard, 370 Ill 92, 100, 17 NE 2d 963 (1938); and in other cases.

■ In the light of these decisions, we conclude that Clancy, who was neither a party to the proceeding, nor a privy to the judgment or privy in blood or estate, had

no standing to file the section 72 petition in his own name, and that he has no standing to prosecute this appeal.

■ Consequently, we do not reach the merits of Clancy's alleged defense. However, even if we held that Clancy had standing to bring the petition, we would not reach his alleged defense in that the foregoing recitation of the facts leading up to the filing of his section 72 petition conclusively establish that he was not diligent in presenting his defense; and, in addition, section 72 may not be used as a procedure whereby matters previously heard are presented to the court to be relitigated.

■ The remedy provided by section 72 is not available unless the petitioner shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense, was not made to appear to the trial court. Gunderson v. Rainbow Cleaners & Laundry, 77 Ill App2d 268, 272, 222 NE2d 41 (1966) ; Piper v. Reder, 70 Ill App2d 141, 144, 217 NE2d 487 (1966). And, Section 72 does not afford a remedy whereby matters previously adjudicated may be relitigated. Weaver v. Bolton, 61 Ill App2d 98, 105, 209 NE2d 5 (1965). Were the court to grant relief to Clancy under the circumstances of this case, we would permit section 72 to be used to relieve him of his own negligence and to afford a procedure whereby the matters previously litigated by Mary C. Morgan's section 72 petition, would be relitigated. This is not the function and purpose of the section.

A motion to dismiss the appeal was filed herein and was taken with the case. In view of our conclusions, the appeal is dismissed.

Appeal dismissed.

MORAN, P. J. and ABRAHAMSON, J., concur.