THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. LELAND COLE, Respondent-Appellant.

Third District    No. 3—97—0136

Opinion filed September 25, 1998.

Christopher W. Kanthak, of Galesburg, for appellant.

Paul Mangieri, State's Attorney, of Galesburg (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a bench trial, the trial court found respondent, Leland L. Cole, to be a "sexually dangerous person," as that term is defined in section 1.01 of the Sexually Dangerous Persons Act (725 ILCS 205/0.01 *et seq.* (West 1996) (the Act)). 725 ILCS 205/1.01 (West 1996). On appeal, respondent contends: (1) that a clinical diagnosis of pedophilia cannot satisfy both the "mental disorder" component of the definition of "sexually dangerous person" and the other elements of the definition; and (2) that the State failed to prove beyond a reasonable doubt that respondent is a "sexually dangerous person." For the reasons that follow, we affirm.

Initially, we note that this court granted the Office of the State Appellate Defender (OSAD) leave to withdraw as counsel for respondent. OSAD made its motion on the premise that section 10 of the State Appellate Defender Act (725 ILCS 105/10 (West 1996)) does not permit OSAD to represent clients in civil matters, such as those under review here (725 ILCS 205/3.01 (West 1996)). The State then filed a motion asking our supreme court to issue a supervisory order directing this court to vacate its earlier order and enter an order denying OSAD's motion for leave to withdraw. The supreme court denied the State's motion.

In its brief, the State asks this court to reconsider the decision to

allow OSAD to withdraw in light of the supreme court's recent resolution of a similar controversy in the second district. In that case, the Second District Appellate Court denied OSAD's motion for leave to withdraw as counsel for a respondent who was appealing his commitment as a "sexually dangerous person." OSAD then asked the supreme court for a supervisory order directing the appellate court to vacate its earlier order and enter an order allowing OSAD's motion for leave to withdraw. The supreme court denied OSAD's motion.

We must agree with the State that the supreme court has not exercised its supervisory power consistently in addressing this issue. However, in view of the late stage of this appeal and the circuit court's appointment of competent appellate counsel to represent respondent, the interest in judicial economy weighs heavily in favor of reaching the merits of respondent's appeal without further delay. Accordingly, the State's motion to reconsider is denied.

We now turn to a review of the proceedings in the trial court. At trial, T.L., a 10-year-old boy, testified that he stayed overnight at his grandfather's home on several occasions during July and August 1995. When he visited his grandfather, T.L. would sleep on the living room floor. Respondent would sleep on a couch in the living room. On four or five occasions, respondent undid T.L.'s pants and sucked on his penis. During these events, no one else was present except for T.L.'s grandfather, who was asleep in the next room.

Milo L., T.L.'s father, testified T.L. spent several evenings at his grandfather's home during July and August 1995. At some point, however, T.L. refused to stay there. During the autumn of 1995, T.L. began to protest that he did not want to go to school. Once at school, T.L. would cry and ask to go home. The school's principal allowed T.L. to call home every morning. On some occasions, T.L. had to be picked up and taken home. Milo asked T.L. what was wrong. T.L. told his father that he could not tell him what was wrong. In February 1996, Milo asked T.L. whether anyone had ever touched him "where they're not supposed to." T.L. answered that someone had and identified respondent as the person who had done so.

On the State's motion, the trial court took judicial notice of respondent's prior sex offense convictions. In 1990, respondent pleaded guilty to aggravated criminal sexual abuse for fondling the penis of a boy under the age of 13 and was sentenced to a five-year prison term. In 1985, respondent was convicted of aggravated criminal sexual abuse for fondling the penis of a boy under the age of 13 and placed on probation. In 1981, respondent was convicted of contributing to the sexual delinquency of a minor for fondling a boy under the age of 14 and sentenced to a one-year prison term. In 1974, respondent was

convicted of contributing to the delinquency of a minor for fondling a boy under the age of 14 and placed on probation.

Dr. Robert E. Chapman, a court-appointed psychiatrist, testified on behalf of the State. In an interview with Chapman, respondent denied any sexual activity with children. However, in view of respondent's long history of molesting prepubescent males, Chapman concluded that respondent is a "sexually dangerous person." Specifically, Chapman found that respondent suffers from pedophilia and anti-social personality disorder and that respondent had suffered from these mental disorders for more than one year prior to the filing of the State's petition.

Chapman testified he had evaluated respondent in 1990 as part of an earlier attempt to commit respondent. In his 1990 evaluation, Chapman had concluded that he did not have sufficient information to diagnose respondent as a pedophile. However, respondent's conviction on the 1990 charges and his most recent arrest provided Chapman with enough information to make a diagnosis of pedophilia. On cross-examination, Chapman admitted that his diagnosis of pedophilia was based entirely on respondent's history of committing sex offenses against young boys.

Dr. Anthony James Caterine, another court-appointed psychiatrist, testified on behalf of the State. In an interview with Caterine, respondent denied any sexual activity with children. Respondent also refused to submit to a penile plethysmography test, a test which can determine a male's principal sexual preference by measuring changes in the circumference of the penis.

Caterine concluded that respondent is a "sexually dangerous person." In particular, Caterine diagnosed respondent as suffering from pedophilia. Caterine explained that respondent met the criteria for pedophilia outlined in the latest Diagnostic and Statistical Manual of Mental Disorders (DSM IV). Caterine set forth the following as the DSM IV criteria for pedophilia: (1) over a period of at least six months, the subject has had recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger); (2) the fantasies, sexual urges, or behaviors cause clinically significant distress or impairment in social, occupational, or other important areas of functioning; and (3) the subject is at least 16 years of age and at least five years older than the child who is the subject of the fantasies, urges, or behaviors. In applying these criteria to respondent, Caterine concluded that the similarities among respondent's sex offenses demonstrated a long-term pattern of behavior involving sexual activity with prepubescent males. In addition, respondent's legal problems

stemming from his sexual activity with young males, including a five-year term of imprisonment, satisfied the second DSM IV criterion.

Dr. Richard L. Grant, a licensed psychiatrist, testified on behalf of respondent. In his interview with Grant, respondent denied ever engaging in any sexual activity with children. Grant agreed with Chapman and Caterine that respondent has propensities to commit sex offenses against children, but disagreed that respondent suffers from a mental disorder which would permit him to be classified as a "sexually dangerous person."

With respect to whether respondent suffers from a mental disorder, Grant disagreed with Caterine's application of the DSM IV criteria for pedophilia. According to Grant, repeated sexual activity with prepubescent children is not sufficient to support a diagnosis of pedophilia. Grant opined that a pedophile's principal object of sexual arousal is the prepubescent child. In view of respondent's denial of such arousal and the lack of a penile plethysmography result, Grant concluded that it was impossible to determine that children are the principal object of respondent's sexual desire. In addition, Grant asserted that incarceration resulting from sexual activity with children is not the kind of impairment contemplated by the second DSM IV criterion for pedophilia.

At the close of evidence, the trial court found respondent to be a "sexually dangerous person" under the Act and committed him to the Department of Corrections.

On appeal, respondent contends that his history of sex offenses against young boys cannot satisfy the "mental disorder" component of the definition of "sexually dangerous person," while also meeting the second and third prongs of the definition.

■ Under the Act, a "sexually dangerous person" is a person who: (1) has suffered from a "mental disorder" for at least one year; (2) has criminal propensities to the commission of sex offenses; and (3) has demonstrated propensities toward acts of sexual assault or sexual molestation of children. 725 ILCS 205/1.01 (West 1996).

■ The evidence adduced at trial clearly shows that the State's experts based their opinions primarily, if not entirely, on respondent's long history of legal troubles related to his commission of sex acts with young boys. The State's experts agreed that this history supports a diagnosis of pedophilia and that respondent has suffered from this disorder for more than one year before the filing of the State's petition in this matter. It is also clear that this same history of sex offenses against prepubescent males meets the second and third prongs of the Act's definition of "sexually dangerous person."

However, respondent does not explain why it is impermissible for

his criminal history to support both a psychiatric diagnosis (pedophilia) and a legal conclusion (sexually dangerous person). Respondent does not identify any right, whether it be constitutional, statutory or otherwise, which has been denied to him.

Moreover, contrary to respondent's contention, the Act's "mental disorder" requirement is not rendered superfluous because a pattern of criminal behavior is the sole support for the diagnosis of a mental disorder. The "mental disorder" requirement may be satisfied by a number of means other than criminal conduct. A qualified psychiatrist could diagnose a "mental disorder" based on an interview, standardized testing, a physical test like penile plethysmography, or some combination of these indicators. In short, because the "mental disorder" element may be established by means other than criminal conduct, the fact that it is established by a pattern of criminal conduct in this case does not render the requirement a nullity. See *People v. Cochran*, 167 Ill. App. 3d 830, 522 N.E.2d 261 (1988) (statutory language awarding good-time credit to insanity acquittees is not rendered superfluous merely because an insanity acquittee may be committed for a term of natural life and good-time credit is not permitted for a life sentence—the credit is still available to insanity acquittees who have not been committed for natural life). Accordingly, we hold that the same evidence which supports a psychiatric diagnosis of a mental disorder may also meet the remaining elements of the Act's definition of "sexually dangerous person."

■ Next, respondent maintains that the State failed to prove beyond a reasonable doubt that he is a "sexually dangerous person."

Under the Act, the State has the burden of proving beyond a reasonable doubt that a respondent is a "sexually dangerous person." 725 ILCS 205/3.01 (West 1996). A reviewing court will not disturb a trial court's finding that the respondent is a "sexually dangerous person" unless the evidence is so improbable as to raise a reasonable doubt. *People v. Allen*, 107 Ill. 2d 91, 481 N.E.2d 690 (1985).

Two qualified, licensed psychiatrists agreed that respondent suffers from pedophilia. Court records and evidence adduced at trial demonstrated that respondent has engaged in at least five episodes of sexual conduct with prepubescent boys since 1974. The trial court heard the testimony of the latest victim and his father. The trial court was in the best position to observe the demeanor of these witnesses and assess their credibility. Accordingly, this court will not disturb the trial court's finding that respondent is a "sexually dangerous person."

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

HOMER, P.J., and LYTTON, J., concur.