Docket No. 95802–Agenda 3–January 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GARY LAWTON, Appellant.

Opinion filed October 7, 2004.

JUSTICE RARICK delivered the opinion of the court:

Gary Lawton was declared a sexually dangerous person and committed to the custody of the Department of Corrections pursuant to the Sexually Dangerous Persons Act (725 ILCS 205/0.01 
et seq. 
(West 2002)). He subsequently petitioned the circuit court of Pike County to obtain relief from that judgment pursuant to section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2002)). As grounds for his petition, Lawson argued, among other things, that he had been denied the effective assistance of counsel. Following a hearing, the circuit court granted Lawton’s petition. The appellate court reversed. 335 Ill. App. 3d 1085. We granted Lawton’s petition for leave to appeal. 177 Ill. 2d R. 315(a). For the reasons that follow, we now affirm the appellate court’s judgment.

The events giving rise to this appeal began in February of 1998, when Lawton was charged in separate cases with predatory criminal sexual assault of a child (see 720 ILCS 5/12–14.1(a)(1) (West 2002)) for allegedly molesting two four-year-old girls at his church. Following preliminary hearings conducted the following month, the trial court found probable cause to believe that Lawton had committed those offenses.

Lawton, through counsel, subsequently filed a series of pretrial motions, including motions for discovery, a bill of particulars, suppression of evidence, and determination of the competency of witnesses to testify. While those motions were pending, the State initiated civil proceedings against Lawton under the Sexually Dangerous Persons Act. That statute permits the State to seek an involuntary, indeterminate commitment in lieu of a criminal prosecution when a defendant is charged with a criminal offense and is believed to be sexually dangerous. 
People v. Burns
, 209 Ill. 2d 551, 553 (2004). “Sexually dangerous persons” are defined by the law as “[a]ll persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children ***.” 725 ILCS 205/1.01 (West 2002).

Where, as here, the State petitions to have a person declared sexually dangerous, the trial court must appoint two psychiatrists to examine that person. 725 ILCS 205/4 (West 2002). In the case before us, the court appointed Dr. Phillip Bornstein and Dr. Joseph Bolden. Lawton, in turn, retained his own psychiatrist, Dr. Henry Lahmeyer. Lawton waived his right to have the matter heard by a jury, and a bench trial on the State’s commitment petition followed.

During the trial, Dr. Bornstein testified for the State. Dr. Bornstein stated that Lawton did not suffer from any major psychological illness, but diagnosed him with “a personality disorder not otherwise specified” which first appeared when Lawton was 17 years old. Dr. Bornstein explained that, while Lawton did not exhibit all the traits of any one disorder, he did display significant antisocial, narcissistic, and histrionic traits which characterize “Cluster B” personality disorders as described in the Diagnostic and Statistical Manual of Mental Disorders. According to Dr. Bornstein, Cluster B disorders are consistent with sexual aggression and assault.

Much of Dr. Bornstein’s diagnosis was based upon responses given by Lawton when Bornstein questioned him regarding his conviction in 1987 for sexually abusing his stepdaughter. The abuse underlying that conviction extended over several years, escalating from mere fondling when the girl was 9 to intercourse by the time she was 15. Dr. Bornstein found that Lawton minimized the extent of the abuse, describing it simply as consensual sex when the girl was a teen. Dr. Bornstein stated that Lawton’s conduct and his subsequent rationalizations showed a lack of empathy and a degree of selfishness, as well as high levels of untruthfulness, deception, and denial. Dr. Bornstein acknowledged that the trial court ultimately would decide whether the defendant was a sexually dangerous person, but opined that Lawton fit the statutory definition of a sexually dangerous person. Dr. Bornstein then clarified his position. “What I really say,” Bornstein testified, “is he meets the criteria for having a psychiatric disorder which is associated with the propensity to commit sexual offenses.”

The State next called Dr. Bohlen. Dr. Bohlen testified that he diagnosed Lawton with pedophilia, which appeared years earlier when his stepdaughter was nine years old. This opinion was based partially upon Lawton’s prolonged sexual abuse of his stepdaughter and partially upon the fact that Lawton currently availed himself of opportunities to be around young children at home while baby-sitting and at church. According to Dr. Bohlen, Lawton was evasive about his contact with young children at church, and he minimized and rationalized the contact he had with these children. Dr. Bohlen observed that Lawton initially denied being involved in any previous incidents of sexual abuse of children and admitted the 1987 conviction pertaining to his stepdaughter only after Dr. Bohlen advised him that he knew about the case. Even then, Lawton described the sexual abuse of his stepdaughter as a one-time occurrence.

Dr. Bohlen stated that he had examined the reports of the pending charges and found them highly credible. The specific information imparted by the children “would be impossible for them to dream up.” Dr. Bohlen concluded that Lawton fit the statutory definition of a sexually dangerous person.

After Bohlen testified, the State asked the circuit court to take judicial notice of Lawton’s 1987 conviction for sexually abusing his stepdaughter and of the two more recent charges of predatory criminal sexual assault of children which precipitated the proceedings then before the court. In response to the State’s request, Lawton’s attorney conceded that “the law provides that [the court] can consider for purposes of this hearing previous acts, previous convictions, so with respect to the Court taking judicial notice of that I don’t have any objection.” He then specified that he had no objection to the court reading the charges, the guilty plea, the judgment on conviction, and the sentence, but did not think it appropriate for the court to examine the facts of that case. Lawton’s attorney further stated that he “can’t quibble” with the court taking notice of the charges pending against his client for predatory criminal sexual assault.

The circuit court granted the State’s motion to take judicial notice. Lawton then began presentation of his defense by calling as a witness Dr. Lahmeyer. Dr. Lahmeyer forcefully disputed Dr. Bornstein’s diagnosis of a personality disorder not otherwise specified. According to Dr. Lahmeyer, “if you get into a diagnosis like NOS [not otherwise specified], approximately 50 percent of the people in this room would qualify for that; so that has the lowest validity and almost no clinical usefulness.” Dr. Lahmeyer stated that neither the clinical interview he conducted nor the tests he performed on Lawton supported a diagnosis of a personality disorder. According to Lahmeyer, “[t]here is not one shred of evidence that he is suffering from [a] personality disorder of any type.” Dr. Lahmeyer opined that Lawton was simply suffering from an adjustment disorder with mixed emotional features, “quite a lot of depression, quite a lot of anger and some suspiciousness,” resulting from his arrest on the underlying charges and subsequent home confinement. Lahmeyer believed Lawton’s adjustment disorder would dissipate when this case was resolved.

In Dr. Lahmeyer’s view, Lawton had not previously suffered from any other mental disorder and did not meet the criteria for pedophilia. His assaults on his stepdaughter were mere incest. He had no sex offense convictions in the years following his abuse of his stepdaughter, he has a stable marriage, and he has lived in a house with several female minors without incident. Dr. Lahmeyer felt that this displayed “an amazing level of social functioning” inconsistent with pedophilia. Dr. Lahmeyer also questioned the veracity of the current allegations against Lawton and concluded that he did not fit the statutory definition of a sexually dangerous person.

Following Dr. Lahmeyer’s testimony, Lawton also presented testimony from three parents for whom Lawton and his wife baby-sat. Those parents indicated that they had frequently left their children with Lawton and his wife, that they had spoken with their children regarding whether Lawton had ever done anything of a sexual nature with them, and that they would still trust Lawton to baby-sit their children without additional adult supervision.

Based on the evidence presented, the trial court determined that Dr. Bohlen’s diagnosis of pedophilia was not supported. The court found, however that Lawton suffered from a mental disorder, as described by Dr. Bornstein; that the disorder had existed since at least 1987; and that the disorder was coupled with criminal propensities to commit sex offenses. Based on those findings, the court declared Lawton to be a sexually dangerous person and committed him to the custody of the Department of Corrections.

Lawton appealed. The appeal was brought by the same attorney who had represented him in the trial court. The sole claim advanced by the attorney was that the State had failed to adduce sufficient evidence to prove that Lawton suffered from a mental disorder.

The appellate court rejected that claim. It concluded that the testimony of Dr. Bornstein and Dr. Bohlen supported the trial court’s finding that Lawton had a mental disorder. Noting that Lawton had not disputed and “basically concede[d] the presence of the other statutory elements required to support the trial court’s ruling,” the appellate court affirmed. 
People v. Lawton
, 305 Ill. App. 3d 1123 (1999) (unpublished order under Supreme Court Rule 23). Lawton subsequently petitioned this court for leave to appeal. His petition was denied. 
People v. Lawton
, 185 Ill. 2d 649 (1999).

The following year, Lawton filed a petition in the circuit court of Pike County under section 2–1401 of the Code of Civil Procedure to obtain relief from the judgment entered against him in the foregoing case. Lawton proceeded 
pro se 
initially, but later retained an attorney who filed an amended section 2–1401 petition on his behalf.

Lawton’s new lawyer, who was different than the one who had represented him at trial and on direct appeal, argued, 
inter alia
, that Lawton’s previous attorney had failed to provide him with effective assistance. Specifically, the new lawyer contended that Lawton’s prior counsel had been ineffective for failing to properly challenge assertions allegedly made by the State’s Attorney and accepted by the trial court “that proof beyond a reasonable doubt, or any proof at trial, was not required with respect to the ‘demonstrated propensities’ element of the State’s cause of action.”

The State moved to dismiss Lawton’s petition, arguing that the issues raised by Lawton, including his claim of ineffective assistance of counsel, could not be raised in proceedings brought under section 2–1401. The trial court denied that motion, stating:

“I think there is a sufficient gist of a meritorious defense set forth in the petition ***. The best argument [for the State] is probably that under 1401 nowhere in the past has that section allowed the Court to address ineffective counsel. Nowhere has this Court found a case that says, however, if it is a 1401 petition that addresses a sexually dangerous person case is a person denied the right to ask for [ ]effective counsel. *** I agree with [defense counsel]’s arguments as it relates [
sic
] to this issue, that a post conviction petition under the Post Conviction Relief Act is not appropriate. *** That would be the appropriate place to *** address ineffective counsel. Since that’s not available in this kind of a case because this case does involve the loss of liberty by the defendant in his housing for treatment under these ‘civil proceedings,’ then I am perhaps making new law but I am determining that the defendant in this case, Mr. Lawton, does have the right to raise the issue of ineffective counsel in this section 2–1401 petition ***.”

Nearly a year after the State’s motion to dismiss was denied, a hearing was convened at which the court addressed the merits of Lawton’s section 2–1401 petition. The court initially reviewed the elements of the statutory definition of a sexually dangerous person. It then turned to the record in this case. The court opined that the State could not prove demonstrated propensities through the 1987 conviction. More was needed, and more should have been demanded by Lawton’s attorney. In the court’s view, however, the attorney “did not aggressively argue nor present evidence on the issue of demonstrated propensities.” Based on these considerations, the court concluded that

“Mr. Lawton’s previous attorney *** did not provide him with effective counsel, that he did not contest the issue at trial of demonstrated propensities, that there was insufficient evidence of demonstrated propensities that was presented by competent evidence before this trial Court ***. I find that *** ineffective assistance of counsel existed in the area of his failure to object or to contest or to provide counsel involving the issue of demonstrated propensities.”

The court also held that Lawton would not have been found to be a sexually dangerous person if his trial attorney had “taken issue with the element of demonstrated propensities.” The court therefore granted Lawton’s petition, terminated his commitment to the Department of Corrections, and ordered that he be held in the Pike County jail pending further proceedings.

The appellate court reversed, holding that Lawton’s petition should not have been granted. 335 Ill. App. 3d 1085. The court first stated that proceedings under section 2–1401 are not an appropriate forum for a defendant to raise claims regarding competency of counsel. The court then went on to reject defendant’s ineffective- assistance claim on the merits. As noted earlier in this opinion, we subsequently granted Lawton’s petition for leave to appeal from the appellate court’s judgment. The matter is now before us for review.

In undertaking our review, we consider first whether it was permissible for Lawton to utilize section 2–1401 of the Code of Civil Procedure to challenge the competence of the attorney who represented him in the proceedings under the Sexual Dangerous Persons Act. Contrary to the appellate court, we believe that it was.

Proceedings under the Sexual Dangerous Persons Act are civil in nature. They may, however, result in deprivation of liberty and incarceration in the penitentiary for psychiatric treatment. For that reason, defendants subject to the Act must be accorded the same essential protections available to defendants in a criminal prosecution. 
People v. Trainor
, 196 Ill. 2d 318, 328 (2001). They have the right to a speedy trial, the right to confront and cross-examine witnesses testifying against them, and the right against self-incrimination. 
Trainor
, 196 Ill. 2d at 329. They are also entitled to be represented by counsel. 725 ILCS 205/5 (West 2002).

A defendant’s right to counsel in proceedings under the Act not only is conferred by the statute itself, it is required by the United States Constitution. See 
People v. Bailey
, 265 Ill. App. 3d 758, 762 (1994). Implicit in this right to counsel is the right to the assistance of counsel who is effective. Whether a defendant has received effective assistance of counsel is judged according to the same standards used in criminal cases. See 
Bailey
, 265 Ill. App. 3d at 763; 
People v. Dinwiddie
, 306 Ill. App. 3d 294, 300 (1999).

The right to effective assistance of counsel has no meaning unless a defendant has some means to assert it. Where a defendant in a proceeding under the Sexually Dangerous Persons Act contends that he was denied effective assistance of counsel at trial, he may raise that issue on direct appeal from the circuit court’s judgment. See, 
e.g
., 
People v. Johnson
, 322 Ill. App. 3d 117 (2001). When the defendant’s trial counsel goes on to represent him on appeal, however, that avenue is likely to be foreclosed. An attorney cannot be expected to argue his own ineffectiveness. That is why, for example, trial counsel’s failure to assert his own ineffective representation in a posttrial motion does not waive the issue on appeal. See 
People v. Parker
, 288 Ill. App. 3d 417, 421 (1997).

That is the problem facing Lawton in the case before us here. As we have indicated, the lawyer whose actions in the trial court are the basis for Lawton’s claim of ineffective assistance of counsel is the same lawyer who handled Lawton’s appeal on direct review. To advance Lawton’s argument that he had mishandled the trial proceedings would have required the lawyer to argue his own incompetence on appeal. To avoid the criticism that he was incompetent would have required that he compromise his obligation as an attorney to represent Lawton zealously. The lawyer thus faced an inherent conflict of interest.

Defendants seeking to challenge the effectiveness of the representation they received during their criminal trials have a mechanism for avoiding this problem. If their trial counsel continues to represent them on direct review and does not raise the issue of the effectiveness of the representation he provided, notions of waiver will yield to considerations of fundamental fairness and defendants will still be permitted to challenge trial counsel’s effectiveness through proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 2002)). See 
People v. Mahaffey
, 165 Ill. 2d 445, 458-59 (1995).

Because the liberty interests of those subject to involuntary commitment under the Sexually Dangerous Persons Act are no less significant than those of persons facing incarceration for criminal conduct, the same principles of fundamental fairness dictate that we provide them with comparable recourse where their claims of ineffective assistance of counsel went unheard because the same lawyers who represented them at trial handled their direct appeals. The problem is that such defendants cannot invoke the Post-Conviction Hearing Act. The Post-Conviction Hearing Act applies only to persons imprisoned pursuant to a criminal conviction. Proceedings under the Sexually Dangerous Persons Act are civil in nature.
 People v. Lindsey
, 45 Ill. 2d 115, 117 (1970). Some other remedy must therefore be found.

The solution lies in section 2–1401 of the Code of Civil Procedure. In defining the relief available under that statute, the General Assembly used the broadest possible terms. The statute states that it abolishes various enumerated writs, legal and equitable, and that

“[a]ll relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder ***.” 735 ILCS 5/2–1401(a) (West 2002).

One of the guiding principles in the administration of section 2–1401 relief is that the petition invokes the equitable powers of the circuit court to prevent enforcement of a judgment when doing so would be unfair, unjust, or unconscionable. See 
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 225 (1986). Although the statute is ordinarily used to correct errors of fact, nothing in the language of section 2–1401 limits its applicability to such matters. Accordingly, case law has recognized that its functions extend beyond that. See 
Strader v. Chrysler Corp
., 9 Ill. App. 3d 793, 796 (1973). Our own court has held that petitions filed under the statute may also be used to challenge judgments claimed to be defective for legal reasons. See 
Sarkissian v. Chicago Board of Education
, 201 Ill. 2d 95 (2002) (Chicago Board of Education allowed to use section 2–1401 petition to challenge prior judgment against it on the grounds that the manner in which it had been served did not comply with statutory requirements); 
People v. Harvey
, 196 Ill. 2d 444 (2001) (criminal defendant permitted to proceed under section 2–1401 in raising unsuccessful challenge to extended-term sentence based on claim that it did not meet requirements of the sentencing statute).

In barring use of section 2–1401 by individuals such as the defendant in this case, the appellate court cited 
People v. Anderson
, 31 Ill. 2d 262 (1964), 
Putnam v. People
, 408 Ill. 582 (1951), 
People v. Sheppard
, 405 Ill. 79 (1950), and 
Hall v. People
, 402 Ill. 478 (1949). See 335 Ill. App. 3d at 1086-87. Those cases, however, involved criminal defendants who had brought collateral challenges to the judgments in the criminal proceedings against them. Such defendants are entitled to seek relief under the Post-Conviction Hearing Act. As we have just noted, persons facing involuntary commitment as sexually dangerous persons have no access to that remedy.

Our recent opinions in 
People v. Pinkonsly
, 207 Ill. 2d 555 (2003), and 
People v. Haynes
, 192 Ill. 2d 437 (2000), are likewise distinguishable. As with 
Anderson
, 
Putnam
, 
Sheppard
, and 
Hall
, the decisions in 
Pinkonsly 
and 
Haynes 
both involved criminal defendants who were attempting to bring collateral challenges to their criminal convictions. Those defendants had recourse under the Post-Conviction Hearing Act. The defendant in this case does not. 
Haynes
 is further distinguishable from the present case because the defendant in 
Haynes
 did not attempt to raise an ineffective assistance of counsel claim in a section 2–1401 petition. The section 2–1401 petition at issue in 
Haynes
 sought to vacate the defendant’s convictions and death sentence based on newly discovered evidence.

Relief should be granted under section 2–1401 when necessary to achieve justice. To accomplish that goal, the statute is to be construed liberally. See 
In re Marriage of Hoppe
, 220 Ill. App. 3d 271, 282-83 (1991). The appellate court took the opposite approach. In holding that section 2–1401 does not permit actions such as defendant’s, it imposed restrictions that the language of the statute does not include and that the purposes of the statute cannot accommodate.

Doing justice under the law is this court’s highest obligation. Through section 2–1401, the General Assembly has provided us with a versatile and effective means of pursing justice in cases such as this. For reasons that will be discussed later in this opinion, Lawton’s claims are not meritorious. That Lawton’s own claims lack merit should not, however, deter us from recognizing the propriety of allowing other defendants subject to the Sexually Dangerous Persons Act to utilize section 2–1401 to assert claims of ineffective assistance of counsel. Involuntary commitments under the Sexual Dangerous Persons Act are occurring with increased frequency. As the number of such cases grows, the mechanisms available for raising claims of ineffective assistance of counsel will take on heightened importance. While this defendant’s constitutional claims may lack merit, other defendants will have valid claims. It is incumbent on us, as this state’s highest court, to insure that such claims do not fall victim to uncertainties in the law. Defendants need to know how to pursue their claims. Trial courts need guidance in how to handle them. The defendant in this case has litigated the matter zealously. The issues have been framed sufficiently to enable us to make a reasoned decision. Under these circumstances, there is no justification for deferring resolution of the issue.

As a general rule, we must be concerned about the need for finality of judgments. We must also be guarded about when and under what circumstances a party should be permitted to challenge an otherwise valid judgment based on his attorney’s negligence. If this were a conventional civil case in which a litigant sought to collaterally attack a judgment on the grounds that his lawyer was negligent, there would be no question that relief would not lie under section 2–1401. But this is not such a case. It is a proceeding under the Sexually Dangerous Persons Act in which the defendant has a constitutional right to effective assistance of counsel.

To the extent that the right to counsel is guaranteed by the Constitution of the United States, its enforcement need not await more explicit authorization by the General Assembly. The reason is obvious. If implementation of federal constitutional guarantees were dependent on action by state legislatures, states would have the power to prevent citizens from asserting their federal constitutional rights in state courts simply by sitting back and doing nothing. Under our system of government, such a result is impermissible. Illinois may choose the procedure it deems appropriate for the vindication of federal rights. 
Young v. Ragen
, 337 U.S. 235, 238, 93 L. Ed. 1333, 1336, 69 S. Ct. 1073, 1074 (1949). It may not, however, shut its doors entirely to federal constitutional claims. The supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2) requires state courts to enforce federal law and state court judges to be bound by it. As the United States Supreme Court held more than a century ago,

“Upon the State Courts, equally with the Courts of the Union, rests the obligation to guard, enforce and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for, the Judges of the State Courts are required to take an oath to support that Constitution, and they are bound by it and the laws of the United States made in pursuance thereof and all treaties made under their authority, as the supreme law of the land, ‘anything in the Constitution or laws of any State to the contrary notwithstanding.’ ” 
Robb v. Connolly
, 111 U.S. 624, 637, 28 L. Ed. 542, 551, 4 S. Ct. 544, 551 (1884).

Because of the courts’ obligation to honor and protect federal constitutional rights, we may grant relief from a constitutional violation even where the legislature has not delineated a specific mechanism for doing so. This is not a matter of improper “judicial legislating.” It is an intrinsic and essential function of the courts in our federal constitutional system. The Constitution

“does not ‘partake of the prolixity of a legal code.’ 
McCulloch v. Maryland
, 4 Wheat. 316, 407 (1819). It speaks instead with a majestic simplicity. One of ‘its important objects,’ 
ibid
., is the designation of rights. And in ‘its great outlines,’ 
ibid
., the judiciary is clearly discernible as the primary means through which these rights may be enforced. ***

At least in the absence of ‘a textually demonstrable constitutional commitment of [an] issue to a coordinate political department,’ 
Baker
 v. 
Carr
, 369 U.S. 186, 217 (1962), we presume that justiciable constitutional rights are to be enforced through the courts. And, unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights. ‘The very essence of civil liberty,’ wrote Mr. Chief Justice Marshall in 
Marbury
 v. 
Madison
, 1 Cranch 137, 163 (1803), ‘certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.’ ” 
Davis v. Passman
, 442 U.S. 228, 241-42, 60 L. Ed. 2d 846, 860-61, 99 S. Ct. 2264, 2275 (1979).

The action taken by the trial judge in this case was fully consistent with these principles. In no sense did he overstep the bounds of his authority. To the contrary, he acted precisely as the founding fathers hoped state judges would act in undertaking their duties. He did not formulate public policy. He did not create new law. He merely gave effect to a basic constitutional right, the right to effective assistance of counsel. That was his job. It is our job too.

Although we agree with the trial court that Lawton was entitled to challenge the effectiveness of his attorney by means of a petition under section 2–1401, the appellate court was correct in rejecting Lawton’s claim on the merits. As we have indicated, a defendant subject to proceedings under the Sexually Dangerous Persons Act has a right to effective assistance of counsel. Claims that this right has been denied are judged according to the two-prong, performance-prejudice test established in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). 
People v. Albanese
, 104 Ill. 2d 504, 526-27 (1984). Under 
Strickland
, a defendant must prove that defense counsel’s performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel’s errors, the trial result would have been different.
 People v. Alvine
, 173 Ill. 2d 273, 293 (1996). The performance of Lawton’s trial counsel in this case did meet the foregoing standards for ineffectiveness.

Lawton’s argument regarding the inadequacy of his trial attorney’s representation centers on Lawton’s prior conviction in 1987, the purposes for which that conviction was admissible, and the State’s burden of proof under the Sexual Dangerous Persons Act. His claim is twofold. First, he asserts that the attorney was ineffective for acquiescing in the erroneous view, allegedly urged by the State and adopted by the trial court, that the State was not required to prove the that the defendant had “demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children,” as required by the Act. See 725 ILCS 205/1.01 (West 2002). This argument is easily disposed of. We have reviewed the record from the trial court, and it is clear that from the time the State filed its initial petition under the Act to the time judgment was rendered by the court, the case was litigated on the theory that “demonstrated propensities” must be proved and that it was the State’s burden to prove them. Accordingly, Lawton’s trial counsel cannot be faulted for having acquiescing in an erroneous legal standard.

Lawton’s second argument is that his attorney was ineffective because he failed to assert that the State could not rely solely on his 1987 conviction to prove the demonstrated-propensities element beyond a reasonable doubt. This argument is also without merit. To satisfy the demonstrated-propensities element under the Act, the State must prove the defendant has committed or attempted at least one act of sexual assault or molestation. See 
People v. Allen
, 107 Ill. 2d 91, 105 (1985) (“the requirement that the defendant must have ‘demonstrated’ his propensities means only that the commitment order cannot be based solely on psychological speculation” (emphasis omitted)). The State may do this by introducing a record of a prior conviction. 
People v. Hancock
, 329 Ill. App. 3d 367, 380-81 (2002); see 
People v. Masterson
, 207 Ill. 2d 305, 331 (2003) (commenting in 
obiter dicta
 that the evidence presented at the defendant’s original commitment hearing, including a 14-year-old conviction relied upon exclusively to show demonstrated propensities, was sufficient to justify commitment under then-existing standards); 
People v. Cole
, 299 Ill. App. 3d 229, 234 (1998) (holding that “[c]ourt records” demonstrated the defendant committed prior sexual assaults against minors); see also 
People v. Studdard
, 82 Ill. App. 3d 736, 741 (1980) (“Evidence of a prior sex crime is clearly relevant as the State is required to prove that the defendant has a propensity to commit sex crimes and that his mental disorder had existed for more than one year. *** [W]e suggest the use of a certified copy of [the] conviction”).

In accordance with the foregoing authorities, the trial court correctly took judicial notice of the Lawton’s 1987 conviction, and that conviction was sufficient to meet the State’s burden of proving the demonstrated-propensities element. Had Lawton’s attorney objected to the use and sufficiency of the conviction to prove that element, the objection would properly have been denied. The attorney therefore acted reasonably in refraining from asserting such an objection. See 
People v. Wilson
, 164 Ill. 2d 436, 454 (1994) (holding that an attorney’s failure to make a futile objection does not constitute substandard performance); 
In re Ottinger
, 333 Ill. App. 3d 114, 118 (2002). We note, moreover, that admission of the conviction had a strategic benefit for Lawton. It saved him from disclosure of the embarrassing details behind the conviction. See 
People v. Thorpe
, 52 Ill. App. 3d 576, 582 (1977). Lawton does not suggest that his attorney was ineffective in any other respect. We therefore agree with the appellate court that Lawton’s claim of ineffective assistance of counsel fails on its merits. Accordingly, the appellate court was correct when it reversed the judgment of the circuit court granting Lawton’s petition for relief under section 2–1401.

One remaining matter requires our attention. On the date of oral argument, Lawton filed a motion to cite and argue as additional authority our recent opinion in 
Masterson
. The State did not object, and the motion was allowed. The argument advanced by Lawton in his motion is that the State did not present sufficient evidence at trial to satisfy the sexually dangerous person standard we announced in 
Masterson
. In response, the State contends that 
Masterson
, decided last year, does not apply to Lawton, whose case was tried nearly six years ago and whose direct appeal has long since concluded.

We agree with the State. 
Masterson
 involved a direct appeal of a finding that the defendant was sexually dangerous. The case before us involves an appeal from a ruling on a section 2–1401 petition. Though we remanded in 
Masterson
, we also limited the rule announced in that case to prospective application. See 
Masterson
, 207 Ill. 2d at 330 (“a finding of sexual dangerousness premised upon the elements of section 1.01 of the SDPA [citation] must 
hereafter
 be accompanied by an explicit finding that it is ‘substantially probable’ the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined” (emphasis added)); see also 
Miller v. Gupta
, 174 Ill. 2d 120, 128 (1996) (stating that this court’s decisions apply retroactively only to pending cases and cases on direct review). 
Masterson
 is therefore inapplicable to the case before us today.

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed.

JUSTICE GARMAN took no part in the consideration or decision of this case.

JUSTICE FITZGERALD, dissenting:

I strongly agree with the majority that Lawton’s ineffective-assistance-of-counsel claim lacks merit. I strongly disagree with the majority that section 2–1401 provides a new procedural avenue for a defendant committed under the Sexually Dangerous Persons Act (SDPA) to assert an abandoned ineffective-assistance claim.

To obtain relief under section 2–1401, the defendant must show both a meritorious defense to the charges against him and due diligence in presenting it. See 
People v. Pinkonsly
, 207 Ill. 2d 555, 565 (2003). Generally, a meritorious defense under section 2–1401 involves errors of fact, not errors of law. See 
People v. Haynes
, 192 Ill. 2d 437, 461 (2000); see also 
Burns v. People
, 9 Ill. 2d 477, 480 (1956) (noting that a motion to correct errors of fact “is not available for the purpose of correcting errors at law,” such as ineffective assistance of counsel).

“For this reason, a section 2–1401 petition differs from a postconviction petition. A postconviction petition requires the court to decide whether the defendant’s constitutional rights were violated at trial [citation]; a section 2–1401 petition, on the other hand, requires the court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment. [Citation.] ***

We have long held that section 2–1401 proceedings are not an appropriate forum for ineffective-assistance claims because such claims do not challenge the factual basis for the judgment.” 
Pinkonsly
, 207 Ill. 2d at 566-67.

Accord 
People v. Anderson
, 31 Ill. 2d 262, 264 (1964); 
Putnam v. People
, 408 Ill. 582, 585-86 (1951); 
People v. Sheppard
, 405 Ill. 79, 85 (1950); 
Hall v. People
, 402 Ill. 478, 481 (1949); see also 
In re William M.
, 206 Ill. 2d 595, 604-05 (2003) (holding that a juvenile’s ineffective-assistance claim does not fall within the parameters of section 2–1401).

 Though the majority asserts that the relief in section 2–1401 is phrased “in the broadest possible terms,” those terms are certainly no broader than the various common law writs abolished and replaced by the statute. As the majority notes, section 2–1401 provides that “[a]ll relief 
heretofore
 obtainable and the grounds for such relief 
heretofore
 available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder.” (Emphases added.) 735 ILCS 5/2–1401(a) (West 2002). Section 2–1401, thus, is backwards looking. In order to determine whether the statute affords any given relief, such as relief from purportedly ineffective assistance of counsel, we must look to whether that relief was “heretofore” available at common law. See Ill. Ann. Stat., ch. 110, par. 2–1401, Historical & Practice Notes, at 608 (Smith-Hurd 1983) (“Occasionally an analysis of the nature and limits of the various writs replaced by this section aids the court in evaluating the propriety of a petition under this section”), citing 
Frandsen v. Anderson
, 108 Ill. App. 2d 194, 200-01 (1969).

Section 2–1401 abolished the common law writs of 
coram nobis 
and 
coram vobis
, which served to correct errors of fact. Section 2–1401 also abolished bills of review, which were not limited to factual matters.

“Prior to the 1955 revision of the Civil Practice Act, there was no statutory mode in Illinois for obtaining relief from a decree of a court of equity, if the term at which the judgment was entered had passed. Hence, Illinois lawyers utilized the equitable remedies of a bill of review and a bill in the nature of a bill of review. The courts held that these bills could be used to bring matters to the attention of the court in three situations: for error of law upon the face of the decree [citation]; to establish newly discovered evidence [citation]; and to show fraud in the procurement of the decree [citation].” Ill. Ann. Stat., ch. 110, par. 2–1401, Historical & Practice Notes, at 605-06 (Smith-Hurd 1983).

Assuming, then,
 that the relief available under section 2–1401 extends as far as the relief available through bills of review and bills in the nature of bills of review to correct law errors, the defendant is not in one of the three situations where such relief is appropriate. T
he defendant here does not contend that an error of law appears on the face of the trial court’s initial order. Further, the defendant does not contend that newly discovered evidence would change the outcome of his case. Finally, the defendant does not contend that the trial court’s initial order was obtained by fraud. The defendant simply contends that he received ineffective assistance of counsel. At common law, Illinois courts would not grant a bill of review “where the party was prevented from proving important facts by the wrong advice of his counsel” or “the attorney employed by the complainant neglected the case.” 1 S. Puterbaugh, Illinois Chancery Pleading and Practice §328, at 490 (7th ed. 1930); see also P. Van Zile, Equity Pleading and Practice §344, at 475 (1904) (“But mere carelessness or unfaithfulness, or proceeding upon wrong advice, or where documentary evidence was lost or mislaid by carelessness of counsel, will not support a bill of review”). Thus, the defendant could not raise an ineffective-assistance-of-counsel claim in his section 2–1401 petition.

The majority cites 
Sarkissian v. Chicago Board of Education
, 201 Ill. 2d 95 (2002), and 
People v. Harvey
, 196 Ill. 2d 444 (2001), as examples of cases where we have “held that petitions filed under [section 2–1401] may also be used to challenge judgments claimed to be defective for legal reasons.” Slip op. at 9. In 
Sarkissian
, the Chicago Board of Education never filed a section 2–1401 petition; we 
sua sponte
 labeled its motion to vacate a default judgment, purportedly void because service of process violated statutory requirements, as a petition under the statute. Historically, section 2–1401 and its predecessor, section 72 of the Civil Practice Law, have been used to vacate default judgments entered without notice to the defendant. See, 
e.g.
, 
Lusk v. Bluhm
, 321 Ill. App. 349 (1944); 
Swiercz v. Nalepka
, 259 Ill. App. 262 (1930). In 
Harvey
, the defendant filed a section 2–1401 motion alleging that the trial court’s sentencing order was void because it ran afoul of statutory requirements. Section 2–1401(f) actually codifies a common law rule allowing litigants to attack a void judgment at any time. See 735 ILCS 5/2–1401(f) (West 2002) (“Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief”). A litigant may (see 
Harvey
, 196 Ill. 2d at 454 (McMorrow, J., specially concurring, joined by Freeman, J.)), but need not (see 
Harvey
, 196 Ill. 2d at 457, Fitzgerald, J., specially concurring, joined by Thomas and Garman, JJ.)), file a section 2–1401 motion to do so. Neither 
Sarkissian
 nor 
Harvey
 dictate that section 2–1401 should be available to prosecute ineffective-assistance claims.

The defendant finds it ironic that he would have had an avenue of collateral attack if he had been convicted on the underlying predatory criminal sexual assault charges. He asks this court to apply “its fundamental fairness concept” (see, 
e.g.
, 
People v. Flores
, 153 Ill. 2d 264, 274 (1992); 
People v. Gaines
, 105 Ill. 2d 79, 91 (1984)) and devise a similar remedy for sexually dangerous persons. To the extent that the defendant’s fundamental-fairness argument implicates due process, I note that there is simply no due process right to a collateral attack on a final judgment of conviction in a criminal case. See 
United States v. MacCollom
, 426 U.S. 317, 323, 48 L. Ed. 2d 666, 674, 96 S. Ct. 2086, 2090 (1976) (“The Due Process Clause of the Fifth Amendment does not establish any right to an appeal [citation] and certainly does not establish any right to collaterally attack a final judgment of conviction”), citing 
Griffin v. Illinois
, 351 U.S. 12, 18, 100 L. Ed. 891, 898, 76 S. Ct. 585, 590 (1956) (plurality op.); see generally 4 Am. Jur. 2d 
Appellate Review 
§222 (1995). Postconviction and other collateral proceedings remain a matter of legislative grace. As the United States Supreme Court indicated in 
Pennsylvania v. Finley
, 481 U.S. 551, 556-57, 95 L. Ed 2d 539, 547, 107 S. Ct. 1990, 1994 (1987):

“Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief ***.”

If the state need not provide an avenue of postconviction relief to a defendant convicted under the Criminal Code, it follows that the state need not provide an avenue of collateral attack to a defendant committed under the SDPA.
(footnote: 1)
 The General Assembly has not acted, and we should decline to graft a layer of collateral proceedings onto the SDPA in the name of fundamental fairness. Judicial legislation is never appropriate (
Gordon v. Department of Transportation
, 99 Ill. 2d 44, 47 (1983) (“It is the legislature’s task to codify public policy; we refrain from undertaking such impermissible judicial legislation”)), and it is particularly inappropriate in this case because the defendant did not receive ineffective assistance of counsel. In short, the majority opens a door to the defendant’s claim, only to slam it closed. “[S]uch analysis or opinion is not necessary for the disposition” here. 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 470 (1997). We should save any determination that section 2–1401 is a vehicle for constitutional claims for a case in which the need to remedy a constitutional violation is greater or, in fact, exists at all.

I recognize the plight of the defendant and others prosecuted as sexually dangerous or sexually violent persons, who seek to raise claims of ineffective assistance of counsel in collateral proceedings after being represented by the same attorney at trial and on appeal. But we should not disavow our section 2–1401 precedent and define that statute a catch-all vehicle to assert constitutional claims when necessary to achieve some vaguely sketched notion of justice. We should not punch a hole in the statute, out of which will leak any sense of finality in our criminal and civil law.

A far more appropriate disposition, and one I enthusiastically endorse, would be to follow the law as we find it, reject the defendant’s section 2–1401 petition, and focus the General Assembly’s attention on crafting an appropriate collateral proceeding in which defendants under the Sexually Dangerous Persons Act and the Sexually Violent Persons Act can assert constitutional claims of this nature. Until the legislature acts, such defendants should find recourse for their ineffective-assistance claims only in their direct appeals.

I dissent.

JUSTICE THOMAS joins in this dissent.

FOOTNOTES
1:     
1
The defendant raises no equal protection argument in this regard.